HON. JUDGE THOMAS S. ZILLY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| ROBERT COOPER ENGST and ANNA SUSAN ENGST, husband and wife, and the marital community comprised thereof,<br><br>Plaintiffs,<br><br>v.<br><br>USAA CASUALTY INSURANCE COMPANY, a foreign insurance company,<br><br>Defendant. | **Civil Action No. 2:19-cv-02074-TSZ**<br><br>**MOTION TO DETERMINE ENTITLEMENT TO AND REASONABLNESS OF ATTORNEYS' FEES AND LIENS**<br><br>**NOTE ON MOTION CALENDAR: January 21, 2022** |

## I.   INTRODUCTION AND RELIEF REQUESTED

This action was brought by plaintiffs Robert Engst and Anna Engst against their homeowner's insurance company over a dispute related to a water damage claim. Isaac Ruiz and the firm of Ruiz & Smart ("Ruiz"), formerly Plaintiff Litigation Group, sued on plaintiffs' behalf under a contingent fee agreement and Ruiz retained Thomas Lether of Lether Law Group ("Lether") to act as an expert witness.

Months after litigation commenced and over plaintiffs' objections, Ruiz unilaterally withdrew. After trying to convince plaintiffs not to proceed at all, William Smart, an attorney for Ruiz, told plaintiffs that their only viable option was to retain Lether as substitute counsel. Left unrepresented with impeding deadlines and no other options, plaintiffs were forced to

MOTION TO DETERMINE ENTITLEMENT TO AND
REASONABLNESS OF ATTORNEYS' FEES AND
LIENS- 1

LAW OFFICE OF G. LEE RAAEN
3301 Burke Ave. N., #340
Seattle, WA 98103
(206) 682-9580  Lee@LRaaen.com

retain Lether as counsel and drop him as an expert. Mr. Smart coordinated with Lether for Lether to take over the case.

Unknown to plaintiffs and contrary to representations to this Court and to plaintiffs, Ruiz claimed a significant attorney's lien. On November 5, 2020, Ruiz served the lien on Lether prior to plaintiffs' mediation with defendant. Lether did not disclose the lien to plaintiffs and yet remarkably, Lether recommended plaintiffs agree to a settlement and dismissal of the action. On March 11, 2021—nearly four months after dismissal—Lether finally disclosed the lien. Ruiz and Lether now demand plaintiffs pay attorneys' fees totaling 65% of the settlement proceeds plaintiffs obtained through litigation.

Plaintiffs seek a determination that Ruiz is not entitled to any attorneys' fees under Washington law due to their withdrawal without just cause. Plaintiffs also ask the Court to determine the reasonableness of the fees claimed by Lether and, if applicable, by Ruiz. Finally, both Ruiz and Lether breached their ethical and fiduciary duties to plaintiffs and the Court should disgorge significant fees for their misconduct.

This Court has jurisdiction to determine the claims for attorneys' fees applying Washington law. Although the law does not provide a procedure for determining such issues, the Court has discretion to decide how the dispute should be resolved. Plaintiffs ask the Court to establish a procedure and timeline for the Court's consideration and determination of the lien and attorneys' fee claims and the parties' confer and make recommendations to the Court.

## II.    STATEMENT OF FACTS

The underlying action stems from a first-party insurance claim for significant water damage that rendered plaintiffs' home uninhabitable. (Engst Dec.) When it became apparent

that plaintiffs might need to retain counsel to recover amounts owed under their insurance policy, they contacted Isaac Ruiz on October 11, 2019. Mr. Ruiz reviewed the case over a period of several weeks and ultimately declined to represent plaintiffs. After Mr. Ruiz declined to take the case, plaintiffs then spoke to William Smart who, at that time, was a member of the firm of Keller Rohrback. Because of conflicts, Mr. Smart declined the case but recommended plaintiffs again contact Mr. Ruiz. (Engst Dec.) Mr. Ruiz, as lead counsel, agreed to take plaintiffs' case on a 35% contingent fee basis. Ruiz commenced litigation on behalf of plaintiffs on December 21, 2019.

At the time Ruiz & Smart was hired, the firm did not disclose to the plaintiffs that Mr. Smart had recently been disqualified by the Court of Appeals in case similar to that here due to his affiliation with a prior firm. *Plein v. USAA Casualty Insurance Compa*ny, 9 Wn. App. 2d 407, 445 P.3rd 574 (2019), *reversed by Plein v. USAA Cas. Ins. Co*., 195 Wn2d 677, 463 P.3rd 728 (2020). The motion to disqualify in *Plein* was brought by the same defendant and by the same defense counsel as in the present litigation.

On October 12, 2020, approximately 10 months after this action was filed, defendant filed a second motion to amend its answer to the complaint to include allegations of fraud. (Dkt. 33.) Defendant's allegations, although baseless, made it clear that defendants were prepared for extended litigation. Later that same day, knowing that a resolution to the case was nowhere in sight, Mr. Smart tried to convince plaintiffs to drop their case entirely. Plaintiffs strongly disputed the fraud assertions by defendants and pointed Mr. Smart toward evidence that showed defendants' fraud claims to be baseless. The next day, without notice

MOTION TO DETERMINE ENTITLEMENT TO AND REASONABLNESS OF ATTORNEYS' FEES AND LIENS- 3

LAW OFFICE OF G. LEE RAAEN
3301 Burke Ave. N.,  #340
Seattle, WA 98103
(206) 682-9580   Lee@LRaaen.com

and without doing any investigation regarding defendant's allegations, Ruiz notified plaintiffs they were withdrawing as counsel.

Ruiz did not explain to plaintiffs that the firm would subsequently claim an attorney lien and instead told plaintiffs that the firm would take a loss on all the time their firm had invested in the case. Plaintiffs objected to their withdrawal, and again categorically denied defendant's allegations. Ruiz dismissed plaintiffs' objections and refused to reconsider their withdrawal. (Engst Dec.)

Mr. Smart recommended that plaintiffs retain his good friend, Thomas Lether, whom Smart had already retained as an expert witness. (Engst Dec.) On October 14, 2020, two days after defendant filed its motion alleging fraud, Ruiz and Lether filed a stipulated motion and proposed order for withdrawal and substitution of counsel. (Dkt. 35.) Plaintiffs were never given a copy of the motion to withdraw and substitute counsel, did not approve of it despite the motion's claim that plaintiffs moved for the order, and despite Mr. Ruiz's written agreement that his firm would provide all pleadings to plaintiffs in real time. Ruiz's withdrawal just two days after defendant's baseless allegations of fraud caused plaintiffs and their case substantial prejudice. (Engst Dec.)  Neither Lether nor Ruiz informed plaintiffs that Ruiz would claim an attorneys' lien or seek compensation for time worked.

In response to defendant's motion to amend, Lether filed a detailed opposition supported by multiple declarations demonstrating that the fraud allegations were false. (Dkt. # 38-44.) Defendants did not respond to the evidence presented by plaintiffs, but filed a reply simply stating that there was a low bar to allow the amendment and that it should be allowed without any consideration by the Court of the merits of the allegations. (Dkt. #48)

On October 23, 2020, Mr. Smart provided plaintiffs with a draft declaration to be filed with the opposition that stated, "My withdrawal occasions a substantial financial loss for my new firm. We have invested more than $60,000 litigating this bad faith case." Mr. Smart's written communication was consistent with his prior statements to plaintiffs that no fees were owed to Ruiz—yet, fewer than two weeks later, on November 5, 2020, Ruiz served an attorneys' lien on Lether. Lether did not provide this lien to plaintiffs when received.

Before the motion was heard by the Court, the parties agreed to engage in mediation. At a mediation on November 9, 2020 before the Honorable John Erlick (Ret), the parties agreed to amounts for personal property damage, temporary housing, and moving expenses, and to be bound by a repair cost appraisal as specified in the insurance policy. To be absolutely clear: at no time before or during mediation did anyone tell plaintiffs that Ruiz had claimed or served a lien. This information would have been essential to the plaintiffs making an informed decision about settlement.

Following mediation, defendants specifically required plaintiffs assert that there were no liens against the settlement proceeds, and that plaintiffs would be liable for any liens. Lether signed and approved the settlement agreement, including the language regarding there being no current liens, and advised his clients agree to its terms. (Engst Dec.) Again, at no point during the mediation and appraisal process did Ruiz or Lether inform plaintiffs of the Ruiz lien. This failure to disclose the lien to plaintiffs violated Lether's ethical duties and prejudiced plaintiffs' interests at a critical time in the litigation: final settlement negotiations.

The following is a summary of significant dates.

- Plaintiffs contact Ruiz to assist with claim. 10/11/2019. (Engst Dec.)
- Ruiz commences litigation on behalf of plaintiffs. 12/21/2019. (Dkt. 1.)

- Ruiz retains Lether as expert. August 2020. (Engst Dec.,)
- Defendant files second motion to amend. 10/12/2020. (Dkt. 33.)
- Ruiz, without notice and over plaintiffs' objections, informs plaintiffs they are unilaterally withdrawing from the case. 10/13/2020. (Engst Dec.)
- Ruiz and Lether, without notice to plaintiffs, file a stipulated motion and order to withdraw and substitute counsel. 10/14/2020 (Dkt. 35). Court grants stipulated order. 10/15/2020. (Dkt. 36.)
- Ruiz serves Lether with attorneys' lien for $86,884.60 ($82,896 plus costs). 11/5/2020. (Engst Dec.) Neither Ruiz nor Lether disclose lien to plaintiffs. (Engst Dec.)
- Mediation. 11/9/2020. Plaintiffs unaware of lien. (Engst Dec.)
- Parties sign settlement agreement, which stated that plaintiffs are unaware of any liens. 11/25/2020. Ruiz lien still undisclosed. (Engst Dec.)
- Appraisal Award. 2/17/2021 (Engst Dec.)
- Ruiz notifies defendant insurance company of the lien resulting in delays in payment of settlement. March 2021. (Engst Dec.)
- Lether finally discloses lien to plaintiffs. 3/11/2021. (Engst Dec.)

Lether did not disclose the lien to plaintiffs until months after the settlement agreement was signed and the case was dismissed did—<u>just 9 days</u> before settlement proceeds were to be paid to plaintiffs. At that point, Lether was compelled to disclose the lien because Ruiz' notice to defendant delayed payment of the settlement to him. Concurrent with the disclosure of the lien, Ruiz threatened in writing to sue plaintiffs unless the full amount of the lien was paid. This was remarkable: Ruiz threatened to sue its own clients without having ever provided the plaintiffs a bill or explaining why fees would be owed under a contingent fee agreement where the attorney failed to perform. (Engst Dec.)

After disclosing the lien and Ruiz's threat of litigation, Mr. Lether informed plaintiffs that he had a previously undisclosed conflict of interest and could not get involved in a fee

dispute with Ruiz. Mr. Lether has never explained the nature of his conflict of interest. (Engst Dec.)

Ruiz is not entitled to any attorneys' fees under Washington law. (See discussion below.) Even if Ruiz were entitled to any fee, the amount claimed by Ruiz is excessive and unreasonable. Not only does Ruiz claim an amount nearly equal to its contingent fee had it completed the case, it is patently unfair and unreasonable to allow the law firms to demand a total of 65% of the total settlement proceeds when (1) neither represented the plaintiffs the entire case, (2) Ruiz withdrew without cause and over the plaintiffs' objections, and (3) Lether intentionally failed to disclose a lien asserted against plaintiffs which would have materially impacted settlement negotiations. (Engst Dec.)

Lether's and Ruiz's failure to disclose the Ruiz lien to plaintiffs, even during final settlement negotiations, breached their ethical and fiduciary duties to their clients, which call for disgorgement of fees.

### III.    STATEMENT OF ISSUES

A.    Does the Court have jurisdiction to determine the validity of an attorneys' lien and the attorneys' claims for fees, and the reasonableness of fees claimed by plaintiffs' counsel? Yes.

B.    Should the Court order the parties to confer and provide recommendations to the Court for determining the validity of the lien, the reasonableness of claimed fees, and the process for determining the ethical, lien, and fee issues? Yes.

C.    Should the Court enter an order setting a procedure for the presentation of issues regarding the entitlement of any fee to Ruiz & Smart, the reasonableness of fees

claimed by all counsel, and the disgorgement or forfeiture of fees by counsel for breach of fiduciary duties? Yes.

### IV.    AUTHORITY AND ARGUMENT

**A. This Court has ancillary and supplemental jurisdiction to determine the validity of the attorneys' lien and the reasonableness of fees charged by counsel.**

The Court's jurisdiction in similar matters was discussed in *FSLIC v. Ferrante*, 364 F.3d 1037 (9th Cir. 2004). Ancillary jurisdiction is available to adjudicate fee issues where they are closely related to the underlying action. *Id*. at 1041. In illustrating the scope of such jurisdiction, the Ninth Circuit cited numerous cases applying the concept. *See Curry v. Del Priore*, 941 F.2d 730, 731-32 (9th Cir. 1991) (on attorney's motion to withdraw, court had ancillary jurisdiction to order refund of portion of retainer); *Iowa v. Union Asphalt & Roadoils, Inc.,* 409 F.2d 1239, 1243-44 (8th Cir. 1969) (after attorneys had been granted leave to withdraw, court had ancillary jurisdiction to adjudicate attorneys' claim for fees); *American Fed'n of Tobacco-Growers v. Allen*, 186 F.2d 590, 592 (4th Cir. 1951) (per curiam) (after settlement of antitrust action, court had ancillary jurisdiction to resolve attorney fee dispute). *Id.* Determining the attorneys' fees a party owes easily fits the concept of ancillary jurisdiction. *Id*. citing *Jenkins v. Weinshienk*, 670 F.2d 915 (10th Cir. 1982).

In addition, this Court has supplemental jurisdiction under 28 U.S.C. § 1367 to resolve attorney fee disputes if the claim for fees "forms part of the same case or controversy" as the underlying matter. *FSLIC*, 364 F.3d at 1039. The District Court handling the case is in the best position to decide attorney lien and fee issues arising out of the case before it.

> If this court refused to...exercise jurisdiction [over a discharged attorney's motion for fees, the discharged attorney] would be forced to file a suit in state court. The parties to this

action would then face a considerable delay and expense in having [the discharged attorney's] claim determined. They would be required to make a record that would consist of facts and arguments that are already before this court. Finally, the parties would be forced to litigate before a judge who lacks the long experience with this case, and with these parties, that this court has had. Equity, along with judicial economy, dictate that this court employ its ancillary jurisdiction to hear this motion.

*Venegas v. Skaggs*, 867 F.2d 527, 531 (9th Cir. 1989).

Here, Lether may have recently filed a State court action, however, it has not yet been served; he did not name Ruiz and, as pleaded, would result in an incomplete review of the attorneys' fees. It would cost the parties substantial delay and expense to have Lether, Ruiz and plaintiffs litigate this case in state court, where trial is not set until November 2022. In contrast, documents relevant to determining the validity of the attorney's lien and the reasonableness of fees are of record in this Court, and the lienholder's claim requires a showing that its withdrawal was with just cause based on the pleadings before this Court. This Court is in the best position to determine whether just caused existed, the validity of the attorney's lien, and the reasonableness of fees claimed by plaintiffs' attorneys. Disgorgement of fees arises out of the inherent authority of the court to discipline misconduct before it. This court has that jurisdiction and responsibility.

Similar questions have been determined in matters before this Court. *See Jacobson v. Krafchick*, Case No. C13-1519-JCC; *Mallory v. Rowley, Patterson & Schwimmer P.S.*, No. C95-7622(Z).

**B.   Attorney's liens are governed by Washington law.**

"In lien foreclosures, federal courts give effect to state law. 'Federal courts recognize no common law lien of an attorney, but give effect to the laws of the state in which they are held.' 93 A.L.R. 687." *Pitcher Const. Co. v. United States*, 322 F.2d 843, 844 (9th Cir. 1963).

Attorney's liens in Washington are created and governed by RCW 60.40.010-030, which does not provide lien foreclosure procedures applicable to this case. Therefore, courts have broad discretion to prescribe a procedure to determine the validity of an attorney's lien and the reasonableness of attorney's fees. *King County v. Seawest Inv. Assocs.,* 141 Wn. App. 304, 170 P.3d 53 (2007). Parties must be provided due process, and in *Seawest,* the trial court heard the matter based on written submissions. To determine the process to adjudicate the lien and attorney's fee claim, the court looks to whether the parties have ample time "to conduct discovery and otherwise prepare for the evidentiary hearing, … [and] to present evidence, bring counterclaims, and argue their theories of the dispute." *King County v. Seawest*, at 315.

Another example of such a process was *Krein v. Nordstrom* 80 Wn. App. 306, 908 P.2d 889 (1995), which involved the assertion of an attorney's lien against settlement funds in a personal injury lawsuit. *Id*. at 307. The Court of Appeals affirmed a trial judge's decision to permit a half-day trial in which the court entertained affidavits and live testimony to resolve a lien claim. Expert testimony by declaration was also permitted. This "summary process" was upheld as meeting the requirements of procedural due process and was affirmed. *Id.* at 310.

**C. This Court should prescribe a process to determine (i) whether the Ruiz lien is valid, (ii) if Ruiz is entitled to any fees, what the amount of such fees should be, (iii) the reasonable amount of fees that due to Lether, and (iv) if disgorgement of fees is warranted due to Ruiz and Lether's breaches of their ethical and fiduciary duties.**

The Ruiz's lien is not valid. Ruiz represented plaintiffs on a contingent fee agreement. Ruiz had not substantially performed when the firm withdrew. A lawyer under a contingent fee agreement who voluntarily withdraws from the representation of a client without good

MOTION TO DETERMINE ENTITLEMENT TO AND REASONABLNESS OF ATTORNEYS' FEES AND LIENS- 10

LAW OFFICE OF G. LEE RAAEN
3301 Burke Ave. N.,  #340
Seattle, WA 98103
(206) 682-9580   Lee@LRaaen.com

cause or justification is not entitled to any fee: contingency, hourly, or quantum meruit. *Ausler v. Ramsey*, 73 Wn. App. 231, 236, 868 P.2d 877 (1994).

If the withdrawal is found to be for just cause, determining the reasonableness of Ruiz's claimed fees will be necessary. A lawyer terminated or prevented from completing the fee agreement only may have the reasonable quantum meruit value of the services. *Wright v. Johanson*, 132 Wash. 682, 692, 233 P. 16 (1925); *Kimball v. Pub. Util. Dist. No.* 1, 64 Wn.2d 252, 257, 391 P.2d 205 (1964); *Ramey v. Graves*, 112 Wash. 88, 91, 191 P. 801 (1920). The court in *Ramey* stated:

> The rule is that, where the compensation of an attorney is to be paid to him contingently on the successful prosecution of a suit, and he is discharged or prevented from performing the service, the measure of damages is not the contingent fee agreed upon, but reasonable compensation for the services actually rendered.

112 Wash. at 91.

This Court should also determine what reasonable fees are due to Lether considering the work performed, the failure to disclose the Ruiz lien, and the failure to disclose a material conflict of interest. Plaintiffs also seek the Court's determination of whether disgorgement of fees is warranted due to Ruiz and Lether's breaches of their ethical and fiduciary duties to their clients and misrepresentations to this Court. Regardless of what a lawyer's fee agreement may provide, Washington courts have applied fiduciary duty principles in denying a lawyer's right to receive or retain attorney fees for breaches of ethical obligations to clients under the RPCs. These forfeitures and disgorgements of fees are not "damages" and do not require showing proximate cause between the unethical conduct and a loss to the client, but are based on the inherent power of a trial court to "discipline specific breaches of professional responsibility, and to deter future misconduct of a similar type." *Eriks v. Denver*, 118 Wn.2d

451, 463, 824 P.2d 1207 (1992). Ethical issues exist in this case including, but not limited to, the failure of plaintiffs' lawyers to comply with RPC 1.4 regarding Ruiz's undisclosed claim of fees and attorney's lien so their clients could make informed decisions regarding the case, RPC 1.5 billing practices, asserting an improper attorneys' lien, claiming excessive fees, and misrepresentations to their clients and the Court.

Plaintiffs ask the Court to prescribe a procedure to determine the validity of the Ruiz lien and to determine the reasonableness of the attorneys' fees claimed.

## V.   CONCLUSION

This Court has jurisdiction and should prescribe a process to determine the validity of the Ruiz lien, whether ethical and fiduciary breaches warrant the disgorgement of fees, and the reasonableness of any fees to which the lawyers may be entitled. Plaintiffs ask this Court order the parties to confer and provide a Joint Status Report suggesting the scope and nature of discovery and the process for the issues to be presented and heard by the Court. Upon submission of a joint report and any unresolved procedural issues, plaintiffs ask the Court to set a procedure for the presentation and determination of questions regarding the lawyers' claims for fees and the validity Ruiz's lien.

Respectfully submitted this 7th day of January 2022.

*LAW OFFICE OF G. LEE RAAEN*

_____
G. Lee Raaen, WSBA #6258
3301 Burke Ave. N., Suite 340
Seattle, WA 98103
lee@lraaen.com  206.682.9580

CERTIFICATE OF SERVICE

I certify that on 7 January 2022, I electronically filed the foregoing with the Clerk of the Court and caused a copy to be served on counsel listed below using the CM/ECF System.

> Isaac Ruiz
> William C. Smart
> Ruiz & Smart
> Plaintiff Litigation PLLC
> 95 S. Jackson St., Ste. 100
> Seattle, WA 98104
>
> Thomas Lether
> Lether Law Group
> 1848 Westlake Ave. North
> Seattle, WA 98109
>
> Joshua N. Kastan
> Melissa O'Connor
> DKM Law Group, LLP
> 1700 7th Avenue, Suite 2100
> Seattle, WA 98101

I certify under penalty of perjury under the laws of the State of Washington that the foregoing is true and correct this 7 January 2022.

_____
G. Lee Raaen
Attorney for Plaintiffs