Exhibit 1



Living Room Main Floor – Photo taken in early 2019



Living Room Main Floor – Photo taken 10/25/2020



Living Room Main Floor – Photo taken in early 2019





Dining Room Main Floor
Photo taken 10/25/2020

Living Room Main Floor
Photo taken 10/25/2020



Main Floor Hardwood Detailing and African Mahogany Baseboards
Photo taken in early 2019



Living Room Main Floor – Photo taken 10/25/2020



Dining Room Main Floor – Photo taken in early 2019



Dining Room Main Floor – Photo taken 10/25/2020



Family Room in Basement – Photo taken in early 2019



Family Room in Basement – Photo taken 10/25/2020



Bathroom in Basement – Photo taken in early 2019



Bathroom in Basement – Photo taken 10/25/2020



Bedroom in Basement – Photo taken in early 2019



Bedroom in Basement – Photo taken 10/25/2020



Top Floor Bathroom – Photo taken in early 2019



Top Floor Bathroom – Photo taken 10/25/2020



Living Room Main Floor – Photo taken in early 2019



Top Floor Master Bedroom – Photo taken in early 2019



Top Floor Bedroom – Photo taken in early 2019



Top Floor Bedroom – Photo taken 10/25/2020





Family Room and Hall in Basement
Photo taken 10/25/2020

Master Bedroom Top Floor
Photo taken 10/25/2020

Exhibit 2



95 S Jackson St, Ste 100
Seattle, Washington 98104
Tel. 206-203-9100

November 6, 2019

## REPRESENTATION AGREEMENT

This is a contingent-fee agreement.

### Section 1. Who are the parties to this agreement for legal services?

This agreement is a contract. The only parties to this contract are:

- Plaintiff Litigation Group, PLLC ("the firm");
- Cooper Engst; and
- Anna Engst (together "the client").

### Section 2. What is the scope of legal services to be provided?

Client requests that attorney perform legal services, and attorney agrees to take all responsible and proper action on client's behalf with respect to legal representation within the following scope:

**Legal claims relating to insurance claim with USAA.**

The firm agrees to pursue the client's claims through trial or arbitration hearing if determined to be necessary. The services that the firm agrees to perform may include, when appropriate:

- investigation of claims;
- evaluation of claims;
- pre-lawsuit communications with adverse parties, including in attempt to reach settlement;
- communication on your behalf with relevant insurers and their representatives;
- preparing and filing of claims in arbitration or in court;
- settlement procedures and negotiations; and

- post-trial motion practice such as defending against a motion for a new trial filed in the trial court or arbitral forum.

Attorney is hereby granted full power of attorney so that attorney may have full authority to prepare, sign, and file all legal instruments, pleadings, drafts, authorizations, and papers as shall be reasonably necessary to handle and to conclude this representation including settlement and/or reducing to possession all monies or other things of value due to client under client's claim.

## Section 3. Who are the potentially adverse people or entities?

It's important to identify the names of people and entities that are potentially adverse to you in this matter so that the firm can determine whether there is a conflict of interest. The potentially adverse people or entities in this case are:

**USAA**
**Its Employees, Representatives, and Consultants**

## Section 4. Who is the lead attorney?

The lead attorney is the person who is responsible for delivering and supervising the legal services under this agreement. Other attorneys and staff are likely to participate in the legal representation, and this may include "of counsel" attorneys who are contracted by the firm, paralegals, and legal assistants. But it is the lead attorney's responsibility to oversee strategy and ensure that high quality legal services are delivered to you.

This is a contingent fee agreement. Nonetheless, the lead attorney's hourly rate is identified for reference. The lead attorney(s) under this agreement is/are:

**Isaac Ruiz, $600 per hour**
**William C. Smart, $750 per hour**

In some cases, Plaintiff Litigation Group PLLC will recommend to you association with other attorneys or law firms, if we believe this to be in the best interests of delivering excellent legal services to you. It will be your choice. If this occurs, it will not result in any increased attorney fees to you, and we will seek your written consent beforehand in a separate letter.

## Section 5. Who decides whether to settle? And does Plaintiff Litigation Group enter into confidentiality agreements?

You do.

The firm won't agree to a settlement on the client's behalf except within the scope of the client's authorization for such settlement.

When a case is settled some defendants ask that our clients and our firm agree to keep secret the details of the settlement and/or what we learned about the defendant's wrongful conduct, by signing what is commonly called a "confidentiality agreement." Confidentiality agreements hide wrongful conduct from the public, allow other people to be hurt in the future, and minimize the legal system's ability to deter bad conduct in the future. Confidentiality agreements do not promote justice and may well violate Washington's Rules of Professional Conduct governing lawyer conduct. Plaintiff Litigation Group attorneys will not sign them. Although we have never seen a settlement fail due to our firm's refusal to sign a confidentiality agreement, as a client you should know that it is possible that a case may be made more difficult to settle, or might not settle at all if the attorneys or client refuse to give the defense a confidentiality agreement. Clients understand and hire Plaintiff Litigation Group knowing that their attorneys will not sign confidentiality agreements.

## Section 6. Can the client directly negotiate with the other side of the dispute?

No.

It is the attorney's responsibility is to act as the client's negotiator in settlement negotiations. So long as this agreement remains in effect, the client agrees that settlement communications on behalf of client shall be conveyed by and through the firm only. In other words, the client agrees not to engage in separate settlement communications.

## Section 7. Can the firm guarantee a good result for you?

No.

It's impossible for any attorney to promise or guarantee an outcome of the legal representation. Attorney makes no such promise or guarantee to client.

## Section 8. What happens if the firm determines the case shouldn't go forward?

Although this is extremely rare, if investigation, evaluation, and factual developments reveal that a legal claim does not warrant the filing of litigation, the firm will tell you and have the right to cancel the contract and withdraw from representing you. If this occurs, attorney will not charge client a fee. In the meantime, the firm will represent you within the scope of representation set forth in Section 2.

## Section 9. How will the attorney fee be calculated?

This is a contingent-fee agreement. NO ATTORNEY FEES SHALL BE PAID IF NO RECOVERY IS OBTAINED FOR THE CLIENT.

The attorney fee will be calculated using the following contingent fee percentage:

### 35 percent

ATTORNEY FEES WILL BE CALCULATED BEFORE THE DEDUCTION OF COSTS.

Client agrees to pay attorney as attorney fees whichever one of the following is greater from a settlement or judgment:

- the contingent fee percentage of "all sums recovered" on client's behalf;
- such attorney fee as the Court may award; or
- such fee as is separately negotiated as a component of an overall settlement.

If this case is appealed by any party, and the firm agrees to represent client in the appeal, the attorney fee shall be calculated as otherwise set forth in this Agreement, except by adding five percentage points to the Contingent Fee Percentage set forth in Section 1. The decision whether to appeal can only be made based on thoughtful consideration by attorney and client of the totality of the circumstances after conclusion of a successful or unsuccessful outcome in the trial court. It is the firm's intention to represent the client in the event the defendant appeals from a judgment favorable to the client.

If at any time you dispute the reasonableness of attorney fees, state law allows a client to file a petition with the court to determine the reasonableness of attorney fees.

## Section 10. What does "all sums recovered" mean?

When calculating a contingent fee, "all sums recovered" means all moneys (and the value of any other property or services) recovered for the clients after commencement of this representation, including any amounts paid as an award of attorney fees, costs, sanctions, or interest.

"All sums recovered" does not include ALE amounts that the insurer has already committed to pay but has not paid at the time of this Agreement. In other words, Client will not pay a fee from ALE amounts that the insurer has already committed to pay.

Moreover, "all sums recovered" does not include contract benefits paid by USAA for damaged or destroyed personal property in the event the insurer pays those benefits upon the submittal of a personal-property inventory. If there is a disagreement over the contract benefits owed for damaged or destroyed personal property, and legal services are performed in advocacy for recovering those benefits, then the benefits obtained as a result will be included in "all sums recovered."

Payment of attorney fees shall be collected by attorney from cash paid at the time of each recovery.


## Section 11. What are "costs" and how are they paid?

Costs are an important part of a legal representation. Costs are expenses that are incurred in addition to attorney fees.

Under this agreement, the client agrees to pay the costs. Costs include but are not limited to:

- the cost of filing in court or before an arbitral forum;
- the cost of serving documents;
- the cost of hiring a private investigator when determined to be necessary for purposes of the legal representation;
- witness fees that are incurred;
- research costs in excess of the usual legal databases used by the firm;
- the costs of obtaining records, including medical reports and records;
- deposition costs, including court reporter and videographer charges;
- costs of retaining consulting and testifying experts, for taking the deposition of other parties' experts, or for consulting with or taking the depositions of health care providers;
- jury fees;
- mail, messenger, and other delivery charges;
- travel, lodging, and parking costs;

- database charges associated with discovery reviews and productions, although these are normally incurred only for larger discovery productions;
- photographer or graphic artist fees;
- duplication and printing expenses, although the firm is committed to functioning as a paperless office as much as reasonably possible; and
- other costs relating to the legal representation.

The firm will advance these costs. Costs will be deducted from the recovery.

Retaining experts can often result in significant expense, and therefore we do this in consultation with the Client. We will let you know in advance which depositions we believe should be taken.


### Section 12. What are the rules that apply when either the firm or you want to end the attorney-client relationship before the end of the case?

Subject to court rules and other applicable laws, the firm shall have the right to withdraw from representation of the client after giving reasonable notice of their intention to withdraw.

Similarly, Client has the right to discharge the firm at any time upon written notice to attorney.

If the firm withdraws for cause (such as when the client misrepresents facts or breaches material terms of this agreement), or if the client discharges the firm, the client agrees to pay attorney a fee calculated as follows:

- If withdrawal or discharge occurs after the firm recommends that client accept a settlement offer, regardless of whether the settlement offer is accepted by the client, the attorney fee shall be the contingent fee percentage of that last settlement offer, before the deduction of costs.
- If no offer was recommended at the time of withdrawal or discharge, the client will pay a reasonable fee for services rendered based upon the hourly rates for the attorneys and paralegals who provided services to client under this agreement. Current hourly rates are available to the client upon request.

The above provisions only apply when either the firm withdraws for cause or when the client discharges the firm. The firm must have cause—such as if a client misrepresents facts or breaches a material term of this agreement—in order for these provisions to apply.

In the case of discharge or withdrawal, the client remains responsible for payment of costs under Section 11.

To secure payment to attorney of all sums due under this agreement for legal services rendered and/or costs advanced, client hereby grants the firm a lien on client's claim(s) and any cause of action for lawsuit filed thereon, and on any recovery client may obtain, whether by settlement, judgment, compromise, or otherwise.

### Section 13. What are other client responsibilities under this agreement?

Client agrees to cooperate with the firm and to comply with all reasonable requests in the prosecution of this matter.

Client also agrees:

- to be truthful;
- to provide whatever information is necessary in the firm's judgment in a timely and competent manner;
- to provide the firm with any change of address, phone number, or business affiliation; and
- to provide immediate information as to any change in the client's status which may have any impact on the prosecution of this claim such as divorce, death of a spouse or interested party, etc.

### Section 14. Your Documents and Property

We do not generally hold originals of the documents you provide to us or your property. Instead, we will likely scan and keep electronic versions. We strive to have a paperless office as much as practical.

It is important that you understand that you are not supposed to delete or destroy any documents, files, or other materials that may be relevant to your legal matter--whether they are originals or copies. Just because we have scanned or copied the documents, files, or other material, this does not mean you are free to delete or destroy them. Deleting or destroying evidence is damaging to your case.

### Section 15. Sharing Information with Other Attorneys

When handling a case we commonly obtain reports from and take depositions of experts hired by the defense. These depositions and reports may talk about your medical condition or other personal facts. We are frequently asked to share these reports and depositions with other attorneys since it helps them prepare to cross examine insurance company defense experts who are often biased. You agree that Plaintiff Litigation Group may share reports and depositions in your case with other attorneys when Plaintiff Litigation Group feels that will help the other attorneys representing other injured persons.

## Section 16. Provisions Regarding Bankruptcy

The client represents that the client is not presently, nor does client contemplate, filing for bankruptcy protection; and that client will inform the firm should such a course of action be contemplated in the future. The client acknowledges any fees or costs owed under this agreement are subject to such proceedings and that they must be scheduled as a debt by client in any bankruptcy proceeding. The client further acknowledges that any expense that the firm may require to protect attorney fees from discharge or reduction in bankruptcy shall be subtracted from amounts that normally would flow to client as client's share of recovery under this agreement.

## Section 17. What happens if a dispute occurs between you and the firm?

If a dispute arises between client and the firm (or any attorney or staff) regarding fees or costs due to the firm or legal services performed by the firm under this agreement, the dispute shall be submitted to binding arbitration if you so choose. If you choose arbitration, this arbitration will also include any claim individually and/or against the law firm or other employees of the firm for breach of contract, negligence, breach of fiduciary duty, or any other wrongdoing, as well as any counterclaims and defenses the firm may assert

For cases in which the client chooses arbitration: The firm and the client hereby WAIVE THEIR RIGHT TO A JURY AND TO DISCOVERY UNDER THE CIVIL RULES in favor of more efficient and inexpensive arbitration of such claims.

## Section 18. Do I have a choice about entering into this Agreement?

Absolutely yes. Don't sign this agreement unless you're sure. If you have any questions or would like changes to this Agreement, we will do our best to answer those questions

and consider changes. **Remember you have the right to seek independent legal advice regarding this Agreement before you sign it.**

### Section 19.  These provisions may sound like be boilerplate, but they're incredibly important. Make sure you read and understand them.

1. **Choice of Law.** This Agreement is governed by Washington law, without regard to Washington choice-of-law rules.
2. **Venue.** If a dispute should arise with respect to this agreement for the payment of fees and costs, venue shall lie in King County, Washington.
3. **Attorney Fees.** The prevailing party in an action arising from this Agreement shall be awarded reasonable costs and attorney fees.
4. **No Other Agreements.** Client has read this contract, has received a copy of it and agrees to its terms and conditions. There are no oral or other agreements between client and attorneys.

Sign: _____     Date: 11/13/2019
**Anna Engst**

Sign: _____     Date: 11/13/2019
**Cooper Engst**

Sign: _____     Date: _____
**Isaac Ruiz, Managing Member**
**Plaintiff Litigation Group PLLC**

Exhibit 3

 Gmail                                    **Cooper Engst <cooper.engst@gmail.com>**

---

### Re: Engst adv. USAA; Revised Representation Agreement

1 message

---

**Isaac Ruiz** <iruiz@plaintifflit.com>                        Thu, Nov 14, 2019 at 12:52 PM
To: Cooper Engst <cooper.engst@gmail.com>
Cc: Anna Engst <anna.s.engst@gmail.com>, Paige Lewis <plewis@plaintifflit.com>

Thanks Cooper and Anna. Very much looking forward to working on this case.

I like that you are thinking about data security. Our practice is to download the documents onto our secure SharePoint server. We try to follow best practices regarding the protection of client data. Paige, can you please pull the documents asap? We will review.

Thanks also for taking such care in organizing the documents! I browsed through the documents, and it is really helpful.

Regarding the questions you ask, I will get to work on them. Regarding Question 1--cashing the checks--I think I want to read all the correspondence first, but I'm 99.9 percent sure the answer will be yes.

Often, the first step in a representation is to send a letter of representation to the insurer. Not so here, though, because I will recommend that for now you continue to send correspondence-- drafted by us for your review--under your names.

We will also get you our signature on the agreement asap.

Best regards,

Isaac Ruiz
Plaintiff Litigation Group PLLC
95 S Jackson St, Ste 100
Seattle, Washington 98104
(206) 203-9100

---

**From:** Cooper Engst <cooper.engst@gmail.com>
**Sent:** Thursday, November 14, 2019 1:16 AM
**To:** Isaac Ruiz <iruiz@plaintifflit.com>
**Cc:** Anna Engst <anna.s.engst@gmail.com>; Paige Lewis <plewis@plaintifflit.com>
**Subject:** Re: Engst adv. USAA; Revised Representation Agreement

Isaac and Paige,

It was great to meet with you today, and thank you for the quick response to our concerns on the agreement -- see signed version attached. Although it's unfortunate that we're in this situation to begin with, we're looking forward to working with you to get it resolved.

We will do our best to get you all the necessary information to ensure that the case is efficient on your end, and also so that you have everything you need to formulate the most effective strategy. Please feel free to lean on us if we can provide any additional past documents/information and also if there is additional new information that would be helpful to obtain (pricing, photos, etc.).

We have set up a Google Drive folder to share documents with you -- see link below. Right now the folder is viewable by anyone with the link, but if you have a Gmail account it would be ideal to restrict it to specific members of your team to

Exhibit 4

 Gmail

**Cooper Engst <cooper.engst@gmail.com>**

---

## RE: Please Cash Your USAA Settlement Check
1 message

---

**William C. Smart <wsmart@plaintifflit.com>**                    Fri, Dec 27, 2019 at 9:05 AM
To: Cooper Engst <cooper.engst@gmail.com>, Isaac Ruiz <iruiz@plaintifflit.com>, Paige Lewis <plewis@plaintifflit.com>,
Shannon McKeon <smckeon@plaintifflit.com>
Cc: Anna Engst <anna.s.engst@gmail.com>, "cengst@eastdilsecured.com" <cengst@eastdilsecured.com>


Yes, Please get them to us.


**From:** Cooper Engst <cooper.engst@gmail.com>
**Sent:** Friday, December 27, 2019 8:56 AM
**To:** Isaac Ruiz <iruiz@plaintifflit.com>; Paige Lewis <plewis@plaintifflit.com>; Shannon McKeon
<smckeon@plaintifflit.com>; William C. Smart <wsmart@plaintifflit.com>
**Cc:** Anna Engst <anna.s.engst@gmail.com>; cengst@eastdilsecured.com
**Subject:** Fwd: Please Cash Your USAA Settlement Check


Will and Isaac,


Hope you had a great Christmas.


Attached is a letter from USAA reminding us to cash our settlement check (there are actually two checks, but this
references only the first one).


Should we send them to you so you can stamp them "Rejected" and send them back? We'll just hold onto them unless
you want us to send them to you.


Isaac, were you able to get in touch with David Glover yet?


Thanks,


Cooper


---------- Forwarded message ---------
From: **USAA Claims** <4wd9hmdc74jq@claims.usaa.com>
Date: Fri, Dec 27, 2019 at 10:02 AM
Subject: Please Cash Your USAA Settlement Check
To: <cooper.engst@gmail.com>

Exhibit 5

 Gmail

**Cooper Engst <cooper.engst@gmail.com>**

---

## Re: Insurance Dispute
1 message

---

**Cooper Engst** <cooper.engst@gmail.com>                                        Tue, Oct 15, 2019 at 2:06 PM
To: Isaac Ruiz <iruiz@plaintifflit.com>
Cc: Paige Lewis <plewis@plaintifflit.com>
Bcc: Anna Engst <anna.s.engst@gmail.com>

Isaac,

A couple additional notes on construction estimates:

 - Attached is an estimate from McBride at $164k; however, I have NOT submitted this to USAA and I do not plan to
submit it at this time.
 - I am also expecting a high-level budget from a fourth residential contractor and I expect the number will be in the
neighborhood of Harjo's estimate. My rationale for getting a third budget is so I can have three GC estimates (excluding
McBride) to challenge USAA's refusal to pay project management and supervision costs, since those items have by far
the largest variance between what USAA has offered and what GC's charge in the real world.

In a litigation scenario, I'm assuming we'd just run with the estimate from Charter, but I wanted to let you know about
these other two numbers in case it's useful.

Thanks,
Cooper

---

**Cooper Engst**
+1 (206) 661-8468
cooper.engst@gmail.com


On Tue, Oct 15, 2019 at 12:15 PM Cooper Engst <cooper.engst@gmail.com> wrote:
Isaac and Paige,

Nice to speak with you today. I have attached the following for your review:

- Timeline of key events (I have a more detailed version, but this gives you a quick glance at the highlights and is
the same document I sent previously)
- Homeowner's policy
- Contractor estimates from Harjo Construction and Charter Construction along with a schedule from Charter (all
of these have been submitted to USAA -- see timeline)
- Select correspondence from USAA, including both the original and revised Xactimate estimates and their
response to Charter's estimate
- Select photos of damage (I have LOTS more)
- Here is a link to a virtual tour showing the "before" condition of the house several months prior to the water
event: https://my.matterport.com/show/?m=Yg9wzcNzrZn

The primary dispute is the cost of repairs. I haven't yet submitted a claim for personal property damage and plan to do
that within the next week or so, but that will be a small amount compared to the repair claim. USAA has paid ALE costs
through mid-January, and I expect there may be a dispute about additional ALE costs, depending on how long it takes
to get this resolved.

Please let me know if there's anything else you'd like to see. Looking forward to speaking with you again tomorrow at
1pm.

Thanks,
Cooper

Exhibit 6

HON. JUDGE THOMAS S. ZILLY

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON AT SEATTLE**

ROBERT COOPER ENGST and ANNA
SUSAN ENGST, husband and wife, and
the marital community comprised thereof,

        Plaintiffs,

v.

USAA CASUALTY INSURANCE
COMPANY, a foreign insurance company,

        Defendant.

No. 2:19-cv-02074-TSZ

DECLARATION OF WILLIAM C.
SMART

WILLIAM C. SMART declares:

    1.      My name is William C. Smart. I am over 18 years of age and am competent to testify. The facts contained in this Declaration are based on my own personal knowledge unless otherwise stated.

    2.      I have been licensed to practice law in the State of Washington for the last 42 years. For 41 years, I was a partner at Keller Rohrback. For the last year, I along with some of my colleagues from Keller Rohrback have formed a new firm, now known as Ruiz & Smart. Attached hereto as **Exhibit A** is a copy of my CV.

DECLARATION OF WILLIAM C. SMART
(No. 2:19-cv-02074-TSZ) - 1

**RUIZ & SMART**
**PLAINTIFF LITIGATION PLLC**
95 S. Jackson St., Ste. 100
Seattle, WA 98104
Tel. 206-203-9100 Fax 206-785-1702

3.      For approximately half of my career, I represented insurers and their insureds in a traditional "insurance defense" practice.

4.      For approximately the last 22 years, I have represented policyholders and others who have had difficulties with their insurance companies.

5.      During the 42 years of my practice, I cannot remember ever having to withdraw because I have been made a witness by the other side. Defendant USAA's motion to amend has required me to do so now. I do so reluctantly, but the assertions in USAA's motion, as well as its interpretation of certain documents created long prior to the time that our firm represented the Engsts which requires me to withdraw in order to oppose USAA's attempt to perpetrate a substantial injustice.

6.      While the decision to withdraw was particularly painful financially for myself and my firm, I felt it was in the best interest of my clients to withdraw in order to have the ability to speak directly to the Court regarding USAA's accusations.

## A.    Facts of investigation.

7.      Cooper and Anna Engst are a young couple age 34 and 32 at the time they engaged our firm. They have just had their first child, Natalie, now 3 months old.

8.      The Engsts suffered a severe water loss in their vintage Queen Anne Home on July 7, 2019.

9.      Between July 7, 2019 and October 2019, Cooper and Anna attempted to pursue their insurance claim with USAA on their own. They did not have much success. Our investigation disclosed that USAA "estimated" the amount of the loss at $92,009 and later revised to $106,091. See **Exhibit B**, estimate of David Glover dated August 16, 2019.

DECLARATION OF WILLIAM C. SMART
(No. 2:19-cv-02074-TSZ) - 2

**RUIZ & SMART**
**PLAINTIFF LITIGATION PLLC**
95 S. Jackson St., Ste. 100
Seattle, WA 98104
Tel. 206-203-9100 Fax 206-785-1702

10.     Prior to our involvement, the Engsts met with several contractors in an attempt to understand the amount that it would cost to repair their home under their USAA replacement cost insurance policy.

11.     The replacement cost insurance policy contains the following definition: replacement cost means:

> (A) in case of loss or damage to buildings, replacement cost means the cost, at the time of the loss, to repair or replace the damaged property with new materials of like kind and quality without the deduction for depreciation."

12.     We learned that no one from USAA had ever explained replacement cost, the option clause, or the claim handling process in sufficient detail so that the Engsts knew their coverages or how the policy worked.  USAA has confirmed its failure to explain the policy. (Glover Dep. at 108:11-109:15.)

13.     Based on my experience and career, I know that evaluating replacement cost for vintage homes can be a challenge. Very often, the tools used by insurance companies including Xactimate do not properly take into account either the unique and historic features of the older homes, nor do they replicate difficult, hard to find, custom, or other nonstandard components of the home. Nor do they address the concerns of labor rates or profit needs for custom contractors.

14.     At some time after the Engsts came to us in November 2019 for representation, we discussed utilizing Harjo Construction to prepare an estimate. Harjo had experience with their home because it had remodeled a portion of the home in the basement.

15.     I and my partner Isaac Ruiz conducted a virtual meeting with the Engsts and Kurt Harjo on approximately March 27, 2020. During that meeting, the Engsts discussed potentially hiring Harjo to perform some remodel work at the same time as the work was proceeding to fix

DECLARATION OF WILLIAM C. SMART
(No. 2:19-cv-02074-TSZ) - 3

**RUIZ & SMART**
**PLAINTIFF LITIGATION PLLC**
95 S. Jackson St., Ste. 100
Seattle, WA 98104
Tel. 206-203-9100 Fax 206-785-1702

the home from the water loss. During our conversation, it was obvious that neither the Engsts nor Harjo understood the way replacement cost insurance worked in situations where a remodel was contemplated.

16.     Mr. Ruiz and I explained in some detail that, under a replacement cost policy, the insured's benefit is measured by what it would cost to replace the home with like kind and quality, using new materials for old, exactly as the home existed prior to the time of the loss.

17.     We explained that where an insured wishes to remodel the home the insured may do so but may not charge the insurer more than the benefit described in the preceding paragraph. During this meeting we instructed Harjo to only price the cost of the restoration work so that there wouldn't be any confusion as to potential scope overlap. We told Harjo that any potential upgrade work that the Engsts might elect to do in the future would be documented with a change order so that it was clearly separate from the insurance restoration scope.

18.     My office explained to Harjo that Harjo should be clear in creating a bid only for repairing the water damage at the home. We also made it clear that any remodel expense on top of the replacement cost for the home should be segregated out and charged to the insured without submittal to the insurance company. Mr. Harjo informed us that he understood these instructions.

19.     During our meeting, we learned that Harjo and the Engsts had had previous discussions concerning what it might cost to repair the home, but that those discussions had not resulted in a complete bid, nor did they address the requirements of the insurance policy identified above.

DECLARATION OF WILLIAM C. SMART
(No. 2:19-cv-02074-TSZ) - 4

20.     Harjo eventually prepared a bid dated April 10, 2020. It was our understanding that the April 10, 2020 bid was the only bid prepared in accordance with our instructions and explanation concerning replacement cost.

**B.     Only registered contractors can bid construction jobs in Washington.**

21.     Our investigation disclosed that no contractor had ever agreed to perform the work for the amount of Mr. Glover's Xactimate estimate.

22.     In Washington, only registered contractors are authorized to bid construction projects. See RCW 18.27.020.

23.     Mr. Glover is not a registered contractor in the State of Washington. He never submitted his estimates to any registered contractor, and no person has agreed to perform the work for that sum.

24.     It is extremely important for an insured such as the Engsts to have a registered contractor estimate the job. Only by using a registered contractor can the insured be confident that they will receive the services of a company that is bonded and insured.

**C.     USAA failed to exercise its option.**

25.     Our investigation also disclosed that the USAA policy contains an option clause. The option clause states as follows:

a.     For property that is eligible for "replacement cost" coverage is at our option to:

(1) Replace, or pay you our cost to replace the property with new property of like kind and quality without deduction for depreciation, or

(2) Pay you the cost to repair or restore the property to the condition it was in just before the loss, or

RUIZ & SMART
PLAINTIFF LITIGATION PLLC
95 S. Jackson St., Ste. 100
Seattle, WA 98104
Tel. 206-203-9100 Fax 206-785-1702

DECLARATION OF WILLIAM C. SMART
(No. 2:19-cv-02074-TSZ) - 5

(3) Pay you the necessary amount actually spent to repair or
replace the damaged property.

26.     Under an option clause, the insurance company has the right to take over the
project and rebuild the home. Of course, when it does so, the insurance company must guarantee
the results. Years ago, insurance companies sometimes exercised their option in an effort to
control the cost of the repair. Experience demonstrated to the insurance companies that they
were not particularly good at managing construction projects and that this proved to be a poor
way for them to control costs. It is now very uncommon for insurers to exercise their option to
repair.

**D.  The choice of contractor belonged to the Engsts.**

27.     When the insurer fails to exercise its option, the choice of contractor rests solely
with the insured. USAA agrees with that proposition here (*see*, Glover Dep. at 111:14-18).

**E.     Contractors are not required to charge an amount approved by USAA.**

28.     Contractors in Washington are not required to:

- Charge the same amount as another contractor.

- Charge an amount to which the insurance company agrees.

- Charge an amount dictated by a secret computerized pricing function such as that
  contained in Xactimate.

29.     In fact, there is no provision in the insurance policy that requires the insured or
the insured's contractor to accept any amount dictated by the insurer. Nevertheless, insurers
often assert the rights to dictate prices based on standards or benchmarks that are found nowhere
in the insurance policy.

DECLARATION OF WILLIAM C. SMART
(No. 2:19-cv-02074-TSZ) - 6

RUIZ & SMART
PLAINTIFF LITIGATION PLLC
95 S. Jackson St., Ste. 100
Seattle, WA 98104
Tel. 206-203-9100 Fax 206-785-1702

**F.** **No registered contractor ever agreed to perform the repairs for the amount of the Glover Xactimate estimate.**

30. Our investigation disclosed that no licensed contractor ever agreed to perform the repairs for the amount of the Glover Xactimate estimate.

31. Insurers routinely attempt to convince insureds and contractors that they have the right to dictate price even though the assertion of that right is found nowhere in the insurance policy.

32. In my opinion, insurer's efforts in this regard are inappropriate efforts to fix prices in the insurance restoration market.

33. Regardless, contractors are free to charge prices that vary from one another and also that vary from any "standard" price asserted to exist by insurance companies.

**G.** **The Engsts had no participation in the development of the Harjo bid.**

34. It is apparent from USAA's motion to amend that it contends that the Engsts had some participation in the creation of the April 10, 2020 bid. USAA attempts to make a connection between the July emails between Kurt Harjo and Alexi Brown-Schmidt and the April 10th bid. To our knowledge no such connection can be made.

- First, the July emails between Harjo and Brown-Schmidt did not involve the Engsts, and took place approximately 9 months prior to the April 10th bid.

- Second, the July emails preceded by at least 8 months the conversation and explanation of replacement cost coverage that I had with Kurt Harjo in March 2020. (See ¶16-20.)

- Third, no conversation was ever had between Harjo, Engst and myself (or anyone else from our firm) concerning profit margins charged by Harjo.

DECLARATION OF WILLIAM C. SMART
(No. 2:19-cv-02074-TSZ) - 7

**RUIZ & SMART**
**PLAINTIFF LITIGATION PLLC**
95 S. Jackson St., Ste. 100
Seattle, WA 98104
Tel. 206-203-9100 Fax 206-785-1702

- Fourth, on October 19, 2020, (4 days ago) Mr. Harjo confirmed profit margin was not a subject of conversation between him, me or Engst. Rather, he alone decided upon what he hoped to realize from the project. The involvement of the insurance company, and the extra time that he needed in order to "deal with" the aggravations and complexities of performing insurance restoration work were all factors he thought might diminish profitability.

35.     USAA's justification for its motion to amend is "plaintiffs may have colluded to obtain an artificially high bid for repairs in order to receive a larger settlement from USAA CIC." (Brief at pg. 7). This suggestion is false, lacks any evidence, and is directly contrary to the conversation that I had with Mr. Harjo in March 2020, and then again on October 19, 2020. The costs for repair of the home would all have gone to Harjo, not the Engsts.

**H.     Prejudice to the Engsts.**

36.     Rarely in my career have I seen an insurer attempt so boldly to disadvantage its insured as in this case. The stated purpose of USAA's amendment is to void the entire policy. (Brief at 10). USAA makes the conclusory assertion (Brief at pg. 9) that plaintiffs will not be prejudiced by USAA's proposed second amended answer and counterclaims. Nothing could be further from the truth. Prejudice is the intent behind the proposed amendment. If it is successful, a young couple with a new baby will likely lose their home.

37.     USAA's arguments relating to the April 10, 2020 Harjo bid is based upon an attempt to connect irrelevant emails or emails generated long prior to my explanation of replacement cost coverage to Mr. Harjo in March 2020.  The April 10 bid was created by Harjo after my explicit instructions concerning how a replacement cost coverage worked. There is

DECLARATION OF WILLIAM C. SMART
(No. 2:19-cv-02074-TSZ) - 8

**RUIZ & SMART**
**PLAINTIFF LITIGATION PLLC**
95 S. Jackson St., Ste. 100
Seattle, WA 98104
Tel. 206-203-9100 Fax 206-785-1702

simply no nexus or connection between the two. On October 19, 2020, Mr. Harjo also confirmed that Mr. Engst had no participation in the creation of the bid.

I.      **The April 10, 2020 bid did not contain any amount for a remodel.**

38.     It was my understanding when I received the April 10, 2020 bid that it did not contain any amount for a remodel.

39.     I confirmed that understanding with Harjo in our conversation of October 19, 2020. He stated that, after my explanation of replacement cost coverage, he and the Engsts decided to "keep it simple" and just proceed with repairing the house to the way it was before the loss. He again confirmed that he alone was in charge of determining the price.

**I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.**

Signed on October 23, 2020.

_____
William C. Smart

DECLARATION OF WILLIAM C. SMART
(No. 2:19-cv-02074-TSZ) - 9

**RUIZ & SMART**
**PLAINTIFF LITIGATION PLLC**
95 S. Jackson St., Ste. 100
Seattle, WA 98104
Tel. 206-203-9100 Fax 206-785-1702

Exhibit 7

 Gmail

**Cooper Engst <cooper.engst@gmail.com>**

---

## Re: Engst v. USAA | Fee Agreement
1 message

---

**Cooper Engst** <cooper.engst@gmail.com>                          Wed, Oct 14, 2020 at 8:42 PM
To: Tami Grende <tgrende@letherlaw.com>
Cc: Anna Engst <anna.s.engst@gmail.com>, Tom Lether <tlether@letherlaw.com>, Lina Wiese <Lwiese@letherlaw.com>,
Lindsay Hartt <lhartt@letherlaw.com>

Tom and Tami,

Attached is the signed agreement. To confirm our conversation, the initial budget is $5,000.

Hopefully it will be possible to resolve the case without a major effort, but we realize it could become more complicated. If you anticipate that the fees and costs are going to exceed the budget please let us know and let's agree on a new budget with a quick email.

We are definitely sensitive to the risk of ballooning legal fees. At the same time, we want the best overall result for the case. As things move forward just let us know your recommended course of action and we'll make quick decisions.

Thanks,
Cooper

---
**Cooper Engst**
+1 (206) 661-8468
cooper.engst@gmail.com

On Wed, Oct 14, 2020 at 3:53 PM Tami Grende <tgrende@letherlaw.com> wrote:

Good afternoon,

Attached please find the Fee Agreement for this matter. If the Fee Agreement looks acceptable, please sign and return the same to our office.

Please let me know if you have any questions or concerns.

Thank you,

Tami Grende | Paralegal

Lether Law Group

1848 Westlake Ave. N., Suite 100 | Seattle, WA 98109

☎ 206.467.5444 x 126 | Fax: 206.467.5544 | Cell: 206.376.4216 |✉ tgrende@letherlaw.com

LetherLaw.com

CONFIDENTIALITY NOTICE: The information contained in this ELECTRONIC MAIL transmission is confidential. It may also be subject to the attorney-client privilege or be privileged work product or proprietary information. This information is

Exhibit 8

HON. JUDGE THOMAS S. ZILLY

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON AT SEATTLE**

ROBERT COOPER ENGST and ANNA
SUSAN ENGST, husband and wife, and
the marital community comprised thereof,

                Plaintiffs,

v.

 USAA CASUALTY INSURANCE
COMPANY, a foreign insurance company,

              Defendant.

No. 2:19-cv-02074-TSZ

DECLARATION OF WILLIAM C.
SMART

WILLIAM C. SMART declares:

      1.     My name is William C. Smart. I am over 18 years of age and am competent to testify. The facts contained in this Declaration are based on my own personal knowledge unless otherwise stated.

      2.     I have been licensed to practice law in the State of Washington for the last 42 years. For 41 years, I was a partner at Keller Rohrback.  For the last year, I along with some of my colleagues from Keller Rohrback have formed a new firm, now known as Ruiz & Smart. Attached hereto as **Exhibit A** is a copy of my CV.

DECLARATION OF WILLIAM C. SMART
(No. 2:19-cv-02074-TSZ) - 1

3.    For approximately half of my career, I represented insurers and their insureds in a traditional "insurance defense" practice.

4.    For approximately the last 22 years, I have represented policyholders and others who have had difficulties with their insurance companies.

5.    During the 42 years of my practice, I cannot remember ever having to withdraw because I have been made a witness by the other side. Defendant USAA's motion to amend has required me to do so now. I do so reluctantly, but the assertions in USAA's motion, as well as its interpretation of certain documents created long prior to the time that our firm represented the Engsts, requires me to withdraw in order to oppose USAA's attempt to perpetrate a substantial injustice.

6.    My withdrawal occasions a substantial financial loss for my new firm. We have invested more than $60,000 litigating this bad faith case.

A.    **Facts of investigation.**

7.    Cooper and Anna Engst are a young couple age 34 and 32 at the time they engaged our firm. They have just had their first child, now 3 months old.

8.    The Engsts suffered a severe water loss in their vintage Queen Anne Home on July 7, 2019.

9.    Between July 7, 2019 and November 2019, Cooper and Anna attempted to pursue their insurance claim with USAA on their own. They did not have much success. Our investigation disclosed that USAA "estimated" the amount of the loss at $108,000. See **Exhibit B**, estimate of David Glover dated August 16, 2019.

DECLARATION OF WILLIAM C. SMART
(No. 2:19-cv-02074-TSZ) - 2

**RUIZ & SMART**
**PLAINTIFF LITIGATION PLLC**
95 S. Jackson St., Ste. 100
Seattle, WA 98104
Tel. 206-203-9100 Fax 206-785-1702

10.     Prior to our involvement, the Engsts met with several contractors in an attempt to understand the amount that it would cost to repair their home under their USAA replacement cost insurance policy.

11.     The replacement cost insurance policy contains the following definition: replacement cost means:

>    (A) in case of loss or damage to buildings, replacement cost means the cost, at the time of the loss, to repair or replace the damaged property with new materials of like kind and quality without the deduction for depreciation."

12.     We learned that no one from USAA had ever explained replacement cost, the option clause, or the claim handling process in sufficient detail so that the Engsts knew their coverages or how the policy worked.  USAA confirms its failure to explain the policy.  (Glover Dep. at ___.)

13.     Based on my experience and career, I know that evaluating replacement cost for vintage homes can be a challenge. Very often, the tools used by insurance companies do not properly take into account either the unique and historic features of the older homes, nor do they replicate difficult, hard to find, custom, or other nonstandard components of the home.

14.     At some time after the Engsts came to us in November 2019 for representation, they expressed a desire to use Harjo Construction as their contractor. Harjo had experience with their home because it had remodeled a portion of the home in the basement.

15.     I and my partner Isaac Ruiz conducted a virtual meeting with the Engsts and Kurt Harjo on approximately March 27, 2020. During that meeting, it was expressed that the Engsts wished to extend the remodel begun by Harjo at the same time as the work was proceeding to fix the home from the water loss. During our conversation, it was obvious that neither the

DECLARATION OF WILLIAM C. SMART
(No. 2:19-cv-02074-TSZ) - 3

**RUIZ & SMART**
**PLAINTIFF LITIGATION PLLC**
95 S. Jackson St., Ste. 100
Seattle, WA 98104
Tel. 206-203-9100 Fax 206-785-1702

Engsts nor Harjo understood the way replacement cost insurance worked in the context of a homeowner wishing to rebuild his home in a fashion different from that which existed prior to the loss.

16.    Mr. Ruiz and I explained in some detail that, under a replacement cost policy, the insured's benefit is measured by what it would cost to replace the home with like kind and quality, using new materials for old, exactly as the home existed prior to the time of the loss.

17.    We explained that where an insured wishes to remodel the home the insured may do so but may not charge the insurer more than the benefit described in the preceding paragraph.

18.    Mr. Ruiz and I explained to Harjo that it should be clear in creating a bid for repairing the home as described, so that any necessary expense on top of the replacement cost for the home as it existed could be segregated out and charged to the insured without submittal to the insurance company. Mr. Harjo informed us that he understood these instructions.

19.    During our meeting, we learned that Harjo and the Engsts had had previous discussions concerning what it might cost to repair the home, but that those discussions had not resulted in a complete bid, nor did they address the requirements of the insurance policy identified above.

20.    Harjo eventually prepared a bid in April 2020. It was our understanding that the April 10, 2020 bid was the only bid prepared in accordance with our instructions and explanation concerning replacement cost.

**B.    Only registered contractors can bid construction jobs in Washington.**

21.    Our investigation disclosed that no contractor had ever agreed to perform the work for the amount of Mr. Glover's Xactimate estimate.

DECLARATION OF WILLIAM C. SMART
(No. 2:19-cv-02074-TSZ) - 4

22.    In Washington, only registered contractors are authorized to bid construction projects. See RCW 18.27.020.

23.    Mr. Glover is not a registered contractor in the State of Washington. He never submitted his estimates to any registered contractor, and no person has agreed to perform the work for that sum.

24.    It is extremely important for an insured such as the Engsts to have a registered contractor estimate the job. Only by using a registered contractor can the insured be confident that they will receive the services of a company that is bonded and insured.

**C.    USAA failed to exercise its option.**

25.    Our investigation also disclosed that the USAA policy contains an option clause. The option clause states as follows:

> a.  For property that is eligible for "replacement cost" coverage is at our option to:
>
>> (1) Replace, or pay you our cost to replace the property with new property of like kind and quality without deduction for depreciation, or
>>
>> (2) Pay you the cost to repair or restore the property to the condition it was in just before the loss, or
>>
>> (3) Pay you the necessary amount actually spent to repair or replace the damaged property.

26.    Under an option clause, the insurance company has the right to take over the project and rebuild the home. Of course, when it does so, the insurance company must guarantee the results. Years ago, insurance companies sometimes exercised their option in an effort to control the cost of the repair. Experience demonstrated to the insurance companies that they were not particularly good at managing construction projects and that this proved to be a poor

DECLARATION OF WILLIAM C. SMART
(No. 2:19-cv-02074-TSZ) - 5

way for them to control costs. It is now very uncommon for insurers to exercise their option to repair.

**D.  The choice of contractor belonged to the Engsts.**

27.    When the insurer fails to exercise its option, the choice of contractor rests solely with the insured. USAA agrees with that proposition here (*see*, Glover Dep. at _____).

**E.    Contractors are not required to charge an amount approved by USAA.**

28.    Contractors in Washington are not required to:

- Charge the same amount as another contractor.

- Charge an amount to which the insurance company agrees.

- Charge an amount dictated by a secret computerized pricing function such as those contained in Xactimate.

29.    In fact, there is no provision in the insurance policy that requires the insured or the insured's contractor to accept any amount dictated by the insurer. Nevertheless, insurers often assert the rights to dictate prices based on standards or benchmarks that are found nowhere in the insurance policy.

**F.    No registered contractor ever agreed to perform the repairs for the amount of the Glover Xactimate estimate.**

30.    Our investigation disclosed that no licensed contractor ever agreed to perform the repairs for the amount of the Glover Xactimate estimate.

31.    Insurers routinely attempt to convince insureds and contractors that they have the right to dictate price even though the assertion of that right is found nowhere in the insurance policy.

DECLARATION OF WILLIAM C. SMART
(No. 2:19-cv-02074-TSZ) - 6

**RUIZ & SMART**
**PLAINTIFF LITIGATION PLLC**
95 S. Jackson St., Ste. 100
Seattle, WA 98104
Tel. 206-203-9100 Fax 206-785-1702

32.     In my opinion, insurer's efforts in this regard are inappropriate efforts to fix prices in the insurance restoration market.

33.     Regardless, contractors are free to charge prices that vary from one another and also that vary from any "standard" price asserted to exist by insurance companies.

**G.     The Engsts had no participation in the development of the Harjo bid.**

34.     It is apparent from USAA's motion to amend that it contends that the Engsts had some participation in the creation of the April 10, 2020 bid. USAA attempts to make a connection between the July emails between Kurt Harjo and Alexi Brown-Schmidt and the April 10th bid. To our knowledge no such connection can be made.

- First, the July emails between Harjo and Brown-Schmidt did not involve the Engsts, and took place approximately 9 months prior to the April 10th bid.

- Second, the July emails preceded by at least 8 months the conversation and explanation of replacement cost coverage that I had with Kurt Harjo in March 2020. (See ¶16-20.)

- Third, no conversation was ever had between Harjo, Engst and myself (or anyone else from our firm) concerning profit margins charged by Harjo.

- Fourth, on October 19, 2020, (3 days ago) Mr. Harjo confirmed profit margin was not a subject of conversation between him, me or Engst. Rather, he alone decided upon, what he hoped to realize from the project. The involvement of the insurance company, and the extra time that he needed in order to "deal with" the aggravations and complexities of performing insurance restoration work were all factors he thought might diminish profitability.

DECLARATION OF WILLIAM C. SMART
(No. 2:19-cv-02074-TSZ) - 7

**RUIZ & SMART**
**PLAINTIFF LITIGATION PLLC**
95 S. Jackson St., Ste. 100
Seattle, WA 98104
Tel. 206-203-9100 Fax 206-785-1702

35.     USAA's justification for its motion to amend is "plaintiffs may have colluded to obtain an artificially high bid for repairs in order to receive a larger settlement from USAA CIC." (Brief at pg. 7). This suggestion is completely false, lacks any evidence, and is directly contrary to the conversation that I had with Mr. Harjo in March 2020, and then again on October 19, 2020. The costs for repair of the home would all have gone to Harjo.

**H.     Prejudice to the Engsts.**

36.     Rarely in my career have I seen an insurer to attempt so boldly to disadvantage its insured as in this case. The stated purpose of USAA's amendment is to void the entire policy. (Br. at 10). USAA makes the conclusory assertion (Brief at pg. 9) that plaintiffs will not be prejudiced by USAA's proposed second amended answer and counterclaims. Nothing could be further from the truth. Prejudice is the intent behind the proposed amendment. If it is successful, a young couple with a new baby will likely lose their home.

37.     USAA seeks to blame the Engsts for generating the April 10, 2020 bid by connecting irrelevant emails or emails generated long prior to my explanation of replacement cost coverage to Mr. Harjo in March 2020.  The April 10 bid was created by Harjo after my explicit instructions concerning how a replacement cost coverage worked. There is simply no nexus or connection between the two. On October 19, 2020, Mr. Harjo confirmed that Mr. Engst had no participation in the creation of the bid.

**I.     The April 10, 2020 bid did not contain any amount for a remodel.**

38.     It was my understanding when I received the April 10, 2020 bid that it did not contain any amount for a remodel.

RUIZ & SMART
PLAINTIFF LITIGATION PLLC
95 S. Jackson St., Ste. 100
Seattle, WA 98104
Tel. 206-203-9100 Fax 206-785-1702

1    39.    I confirmed that understanding with Harjo in our conversation of October 19,

2    2020. He stated that, after my explanation of replacement cost coverage, he and the Engsts

3    decided to "keep it simple" and just proceed with repairing the house to the way it was before

4    the loss. He again confirmed that he alone was in charge of determining the price.

**I DECLARE UNDER PENALTY OF PERJURY THAT THE
FOREGOING IS TRUE AND CORRECT.**

Signed on October 20, 2020.

_____
William C. Smart

DECLARATION OF WILLIAM C. SMART
(No. 2:19-cv-02074-TSZ) - 9

RUIZ & SMART
PLAINTIFF LITIGATION PLLC
95 S. Jackson St., Ste. 100
Seattle, WA 98104
Tel. 206-203-9100 Fax 206-785-1702

Exhibit 9

 Gmail

**Cooper Engst <cooper.engst@gmail.com>**

---

## Re: External Sender--2020 10 19 - Decl. of W. Smart Engst
1 message

---

**Cooper Engst** <cooper.engst@gmail.com>                                                    Thu, Oct 22, 2020 at 10:52 AM
To: Tom Lether <tlether@letherlaw.com>
Cc: Tami Grende <tgrende@letherlaw.com>, Anna Engst <anna.s.engst@gmail.com>

Tom, below are some thoughts on Will's declaration. There are a few factual things that need to be corrected, and I think there are a few items that would be helpful to delete or at least clarify.

**Most importantly, I think it's critical that Will clarify that he advised us that we shouldn't submit the McBride estimate to USAA because it was incomplete and we didn't intend to use them as our contractor.**

Specific edits:

Paragraph 5: Delete, "created long prior to the time that our firm represented the Engsts." I don't think the date that the documents were created is relevant or helpful to our case. If Will insists on keeping that phrase, then perhaps revise to, "created long prior to the time that our firm represented the Engsts and of which the Engsts had no knowlege."

Paragraph 6: Delete paragraph 6 about Will's firm taking a loss on litigating the case. I don't see how that strengthens our position, but let me know if you disagree. If Will insists on keeping that paragraph, then I think it would help to add something to the effect of, "While the decision to withdraw was particularly painful financially for myself and my firm, I felt it was in the best interest of my clients to withdraw in order to have the ability to speak directly to the Court regarding USAA's baseless accusations."

Paragraph 7: Add Natalie's name: "..they have just had their first child, Natalie, now 3 months old."

Paragraph 9: revise to, "USAA 'estimated' the amount of the loss at $92,009 and later revised to $106,091." [need to confirm citation and if not in deposition then reference the USAA estimates]

Paragraph 9: change "November" to "October." We reached out to PLG on October 11 and began discussions about the case on October 15.

Paragraph 11: consider adding language from the policy regarding code upgrade coverage.

Paragraph 14: Change October to November

Paragraph 14: We didn't express a desire to use Harjo. We had a dialogue with PLG to select the contractor that made the most sense for the case. Harjo and Charter had the most complete understanding of the repairs (in contrast to McBride). We collectively agreed to select Harjo because their estimate seemed like it would be more palatable to USAA in comparison to Charter's much higher estimate.

Paragraph 15: Delete, "...it was obvious that neither the Engsts nor Harjo understood...the context of a homeowner wishing to rebuild his home in a fashion different from that which existed prior to the loss." There are two separate pieces of understanding: (a) budget vs. estimate, and (b) allocating cost between restoration work and upgrade work. There was certainly misunderstanding regarding the former item, particularly by Harjo. Anna and I didn't have any misunderstandings about allocating costs between restoration work and upgrade work, and we certainly didn't at the time of that conversation. **We were always clear with Harjo that any upgrade work needed to be estimated and tracked separately -- this was the case from our very first meeting with Harjo, and it's documented in emails.**

Paragraph 17: Either delete this paragraph or add a sentence along the lines of, "During this meeting we instructed Harjo to only price the cost of the restoration work so that there wouldn't be any confusion as to potential scope overlap. We told Harjo that any potential upgrade work that the Engsts might elect to do in the future would be documented with a change order so that it was clearly separate from the insurance restoration scope."

Paragraph 18: either delete or revise to make clear that during that meeting the direction given to Harjo was to only create an estimate for the restoration work and that any potential upgrades would be dealt with in the future as a change order.

Paragraph 29: it might be useful to reference the fact that Mr. Glover suggested to the Engsts that they should hire a contractor that uses the same estimating software as USAA. [this was in response to our answers to Mr. Glover's questions about the Charter estimate]

Paragraph 37: why the language "seeks to blame the Engsts"? It's true that we didn't create the estimate, but that language seems to imply that there is something inappropriate with the April 10, 2020 bid. I think this needs to be re-worded.

_____
**Cooper Engst**
+1 (206) 661-8468
cooper.engst@gmail.com


On Thu, Oct 22, 2020 at 9:13 AM Tom Lether <tlether@letherlaw.com> wrote:

> Here is Will's declaration for your review
> Thomas Lether
> Lether Law Group
> Westlake Office: 1848 Westlake Ave. N., Suite 100 | Seattle, WA 98109
> Queen Anne Office: 1238/1240 Bigelow Ave. N. | Seattle, WA 98109
> ( 206.467.5444 |( 855.467.5444 |Cell 206.498.0693 | F 206.467.5544 |tlether@letherlaw.com
> LetherLaw.com
>
>
> CONFIDENTIALITY NOTICE: The information contained in this ELECTRONIC MAIL transmission is confidential.  It
> may also be subject to the attorney-client privilege or be privileged work product or proprietary information.  This
> information is intended for the exclusive use of the addressee(s).  If you are not the intended recipient, you are hereby
> notified that any use, disclosure, dissemination, distribution [other than to the addressee(s)], copying or taking of any
> action because of this information is strictly prohibited.
>
> To the extent that this communication or email is directed towards any client of Lether Law Group, this communication
> provides legal advice from our office and is intended solely as an attorney-client communication.  Our office represents
> you as your attorney.  Nothing in this communication is related to investigatory or adjusting activities.  Any references to
> investigative or adjusting activities contained in this correspondence are included solely within the context of our legal
> advice.  This communication is not intended to be shared with third parties.
>
> Begin forwarded message:
>
>
>> **From:** Chris Jarman <cjarman@plaintifflit.com>
>> **Date:** October 22, 2020 at 9:13:21 AM PDT
>> **To:** Tom Lether <tlether@letherlaw.com>
>> **Cc:** Shannon McKeon <smckeon@plaintifflit.com>, Isaac Ruiz <iruiz@plaintifflit.com>, "William C. Smart"
>> <wsmart@plaintifflit.com>, Paige Lewis <plewis@plaintifflit.com>
>> **Subject: External Sender--2020 10 19 - Decl. of W. Smart  Engst**
>>
>>
>>
>> Good Morning,
>>
>> I have attached the declaration of WCS for your review, in the Engst case.
>>
>> Thank you
>>
>> Chris
>>
>>
>>
>> **Chris M. Jarman** (she/her/hers)
>>
>> **Legal Assistant**

cjarman@plaintifflit.com

T: 206-705-8026 | F: 206-785-1702


95 S Jackson Street, Suite 100

Seattle, WA 98104

www.plaintifflit.com

Exhibit 10

**Paige Lewis**

> **The existence of this lien was not disclosed to client until 3/11/2021**

| | |
|---|---|
| **From:** | Shannon McKeon |
| **Sent:** | Thursday, November 5, 2020 12:59 PM |
| **To:** | 'tlether@letherlaw.com' |
| **Cc:** | William C. Smart; Isaac Ruiz; Paige Lewis; McKean J. Evans; Eric Neal; Zachary Smith |
| **Subject:** | RE: Engst v. USAA - Attorney Lien |
| **Attachments:** | 2020 11 05 - R&S Attorney's Lien.pdf |

Dear Tom,

Please see the enclosed Attorney's Lien regarding the above-captioned matter.
Thank you,

~Shannon

**From:** Shannon McKeon
**Sent:** Friday, October 23, 2020 1:18 PM
**To:** 'tlether@letherlaw.com' <tlether@letherlaw.com>
**Cc:** William Smart <wsmart@plaintifflit.com>; Isaac Ruiz (iruiz@plaintifflit.com) <iruiz@plaintifflit.com>; Paige Lewis <plewis@plaintifflit.com>; McKean J. Evans <mevans@plaintifflit.com>
**Subject:** Engst v. USAA - Smart Declaration

Dear Tom,

Please see the attached Declaration.
Thank you,

~Shannon

**Shannon K. McKeon** (she/her/hers)
Legal Assistant
smckeon@plaintifflit.com
T: 206-578-3162 | F: 206-785-1702

95 S Jackson Street, Suite 100
Seattle, WA 98104
www.plaintifflit.com



RUIZ & SMART
PLAINTIFF LITIGATION

1

<div style="border:1px solid red; color:red; font-weight:bold">The existence of this lien was not disclosed to client until 3/11/2021</div>

2

3

4

5

6

The Honorable Thomas S. Zilly

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

9

10

ROBERT COOPER ENGST and ANNA
SUSAN ENGST, husband and wife, and the
marital community comprised thereof,

11

Plaintiffs,

12

v.

13

14

USAA CASUALTY INSURANCE
COMPANY, a foreign insurance company,

15

Defendant.

16

Case No. 19-cv-02074-TSZ

ATTORNEY'S LIEN

RCW 60.40.010

17

RUIZ & SMART PLAINTIFF LITIGATION, PLLC, WILLIAM C. SMART, and

18

19

ISAAC RUIZ ("Attorneys"), hereby claim a lien against the property of the former clients

20

ROBERT COOPER ENGST and ANNA SUSAN ENGST ("Clients"), as follows:

21

a) Upon the papers of the Clients, which have come into Attorneys' possession in

22

the course of Attorneys' professional employment;

23

b) Upon money in Attorneys' hands belonging to the client;

24

c) Upon money in the hands of the adverse party in an action or proceeding, in

25

which Attorneys were employed, from the time of giving notice of the lien to that

26

party;

ATTORNEY'S LIEN;
(No. 19-CV-02074-TSZ) - 1

**RUIZ & SMART**
PLAINTIFF LITIGATION PLLC
95 South Jackson Street, Suite 100
Seattle, Washington 98104
Tel. 206-203-9100 Fax 206-785-1702

d) Upon an action, including one pursued by arbitration or mediation, and its proceeds after the commencement thereof to the extent of the value of any services performed by Attorneys in the action, or if the services were rendered under a special agreement, for the sum due under such agreement; and

e) Upon a judgment to the extent of the value of any services performed by Attorney sin the action, or if the services were rendered under a special agreement, for the sum due under such agreement, from the time of filing notice of such lien or claim with the clerk of the court in which such judgment is entered, which notice must be filed with the papers in the action in which such judgment was rendered, and an entry made in the execution docket, showing name of claimant, amount claimed and date of filing notice.

f) The amount of the claimed lien is the sum of $82,896, for services rendered in connection with the above-referenced action, and $3,988.60 for costs advanced.

DATED November 5, 2020, at Seattle, Washington.

_____
WILLIAM C. SMART, WSBA #8192



SUBSCRIBED AND SWORN TO before me this ___5ᵗʰ___ day of November, 2020.
Print Name ___Shannon K. McKeon___
NOTARY PUBLIC in and for the State of Washington;
residing at: ~~West of~~ KING County
My commission expires: 3-30-2021

ATTORNEY'S LIEN;
(No. 19-CV-02074-TSZ) - 2

RUIZ & SMART
PLAINTIFF LITIGATION PLLC
95 South Jackson Street, Suite 100
Seattle, Washington 98104
Tel. 206-203-9100 Fax 206-785-1702

1

2

3

4

5               RUIZ & SMART
                PLAINTIFF LITIGATION, PLLC
6

7               By: _s/ William C. Smart_
                   William C. Smart, WSBA #8192
8                  Isaac Ruiz, WSBA #35237
                   McKean J. Evans, WSBA #52750
9                  95 S. Jackson St., Suite 100
                   Seattle, WA 98104
10                 Tel: 206-203-9100 | Fax: 206-643-1880
                   wsmart@plaintifflit.com
11                 iruiz@plaintifflit.com
                   mevans@plaintifflit.com
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

ATTORNEY'S LIEN;
(No. 19-CV-02074-TSZ) - 3

1

**CERTIFICATE OF SERVICE**

2

3

4

5

I declare under penalty of perjury under the laws of the State of Washington and the United States of America that at all times hereinafter mentioned, I have been a resident of the State of Washington, over the age of eighteen (18) years, not a party to the above-entitled action, and competent to be a witness herein. On the date stated below, I caused a copy of the foregoing document to be served on the individuals identified below via U.S. Certified Mail, Return Receipt, and electronic mail:

6

7

8

9

Thomas Lether, WSBA #18089
Eric J. Neal, WSBA #31863
1848 Westlake Avenue N, Suite 100
Seattle, WA 98109
tlether@letherlaw.com
eneal@letherlaw.com

10

11

*Attorneys for Robert Cooper Engst and Anna Susan Engst*

12

13

Signed November 5, 2020, at Seattle, Washington.

14

15

16

17

Shannon McKeon, Legal Assistant
Plaintiff Litigation Group PLLC
95 S. Jackson St., Suite 100
Seattle, WA 98104
(206) 203-9100

18

19

20

21

22

23

24

25

26

ATTORNEY'S LIEN;
(No. 19-CV-02074-TSZ) - 4

Exhibit 11

 **Gmail**

**Cooper Engst <cooper.engst@gmail.com>**

---

## Cost Impacts for Mediation Engst v. USAA
1 message

---

**Cooper Engst** <cooper.engst@gmail.com>                                   Sat, Nov 7, 2020 at 4:07 PM
To: Tom Lether <tlether@letherlaw.com>, Tami Grende <tgrende@letherlaw.com>
Cc: Anna Engst <anna.s.engst@gmail.com>

Tom,

I updated the list of cost impacts and added comments describing the source of each line item and I also added some bullet points on the remaining timeline. I also adjusted some of the numbers.

There are four different versions with and without treble damages assuming a November resolution and a June resolution.

I increased the line item for legal fees to account for a potential claim from Will. I don't think we'll need to pay those, but since it's an open item I don't think it hurts to include it for the context of the mediation.

If you think these will be helpful to use in the mediation please let me know if I should make any changes to the format, notes, or numbers.

Thanks,
Cooper

---

**Cooper Engst**
+1 (206) 661-8468
cooper.engst@gmail.com

---

**6 attachments**

 **Cost Impacts for Mediation 11-6-2020.xlsx**
45K

 **Summary Comparison.pdf**
40K

 **Cost Impacts June 2021 Resolution.pdf**
49K

 **Cost Impacts November 2020 Resolution_v2.pdf**
50K

**Cost Impacts June 2021 Resolution_v2.pdf**
50K

**Cost Impacts November 2020 Resolution.pdf**
49K

The screenshot below is the Excel cost impact spreadsheet emailed to Lether on 11/7/2020 showing the legal fees to be the total of Lether's stated fees to date of $55,000 plus the fees referenced by Mr. Smart in his declaration of $60,000, which we believed we did not owe. $55,000+$60,000 = $115,000.



Exhibit 12

 Gmail

**Cooper Engst <cooper.engst@gmail.com>**

---

## Engst Pre-Bill
1 message

---

**Lindsay Hartt** <lhartt@letherlaw.com>                                          Mon, Nov 9, 2020 at 10:03 AM
To: Tom Lether <tlether@letherlaw.com>, Cooper Engst <cooper.engst@gmail.com>
Cc: Zachary Smith <Zsmith@letherlaw.com>

Attached is the pre-bill with expert time included on the same bill.


Lindsay Hartt Weiser |Human Resources and Operations Manager

Lether Law Group

1848 Westlake Ave. N., Suite 100 | Seattle, WA 98109

☎  206.467.5444 x 121 |☎   855.467.5444| F 206.467.5544  |✉  lhartt@letherlaw.com

LetherLaw.com


CONFIDENTIALITY NOTICE: The information contained in this ELECTRONIC MAIL transmission is confidential.  It may also be subject to the attorney-client privilege or be privileged work product or proprietary information.  This information is intended for the exclusive use of the addressee(s).  If you are not the intended recipient, you are hereby notified that any use, disclosure, dissemination, distribution [other than to the addressee(s)], copying or taking of any action because of this information is strictly prohibited.


To the extent that this communication or email is directed towards any client of Lether Law Group, this communication provides legal advice from our office and is intended solely as an attorney-client communication.  Our office represents you as your attorney.  Nothing in this communication is related to investigatory or adjusting activities.  Any references to investigative or adjusting activities contained in this correspondence are included solely within the context of our legal advice.  This communication is not intended to be shared with third parties.

---

 **Sample.pdf**
68K

# LETHER & ASSOCIATES, PLLC

1848 Westlake Ave. N., Suite 100
Seattle, WA 98109
Ph:206-467-5444

Cooper Engst

November 9, 2020

**RE:** **Robert Cooper Engst, et al v. USAA Casualty Insurance Company**
**U.S.D.C. Western District of Washington, No. 2:19-cv-02074-TSZ**
**Our Clients:: Robert Engst and Anna Engst**
**Our File No: 20166**

File #:   20166
Inv #:   Sample

| DATE | DESCRIPTION | HOURS | AMOUNT | LAWYER |
|---|---|---|---|---|
| Oct-05-20 | L120                          A106<br>Conference call with counsel for client regarding TL declaration and drafting expert report, as well as additional factual information learned in discovery and in depositions taken to date by client in order to outline expert report | 0.50 | 247.50 | TL |
| Oct-09-20 | L130                          A103<br>Continue to draft expert report | 1.40 | 693.00 | TL |
| Oct-13-20 | L120                          A107<br>Telephone call from Will Smart regarding status of litigation and TL involvement with same | 0.20 | 99.00 | TL |
| | L120                          A107<br>Multiple emails with Will Smart regarding pleadings and pending Motions | 0.30 | 148.50 | TL |
| | L120                          A107<br>Follow up call from Will Smart regarding strategy involving Motion to Amend to Alleged Fraud Issues | 0.30 | 148.50 | TL |

| | | | | |
|---|---|---|---|---|
| L120 | A106 | 0.60 | 297.00 | TL |

Initial telephone call with clients regarding facts of loss and procedures involving defense of claims of misrepresentation

| | | | | |
|---|---|---|---|---|
| L110 | A101 | | | |
| Oct-14-20 | | 1.90 | 845.50 | EN |

Review Motion for Leave to Amend, all other available information, including documents supporting the same, complete court docket, and correspondence with clients for development of opposition to Motion for Leave to Amend;

| | | | | |
|---|---|---|---|---|
| L110 | A101 | 0.60 | 267.00 | EN |

Outline strategy for response to Motion for Leave, including request for evidentiary hearing and Demand for Appraisal;

| | | | | |
|---|---|---|---|---|
| L110 | A101 | 0.20 | 89.00 | EN |

Telephone calls with D. Gaouette regarding appointment of Appraiser;

| | | | | |
|---|---|---|---|---|
| L120 | A107 | 0.20 | 99.00 | TL |

Telephone call with counsel for USAA to address pending Motion to Amend and inspection

| | | | | |
|---|---|---|---|---|
| L120 | A107 | 0.40 | 198.00 | TL |

Follow up call with USAA's separate counsel regarding inspection, Motion to Amend, potential for resolution, and alleged fraud issues

| | | | | |
|---|---|---|---|---|
| L120 | A107 | 0.40 | 198.00 | TL |

Telephone call with Will Smart regarding tactics involving Motion to Amend and Declaration from Will Smart regarding misrepresentation issues

| | | | | |
|---|---|---|---|---|
| L120 | A106 | 0.30 | 148.50 | TL |

Telephone call from client regarding status on multiple issues involving Motion to Amend and inspection

| | | | | |
|---|---|---|---|---|
| L120 | A106 | 0.40 | 198.00 | TL |

Follow up call with client regarding communications with USAA's counsel regarding inspection, Motion to Amend, and potential settlement

| | | | | |
|---|---|---|---|---|
| L120 | A104 | 0.40 | 198.00 | TL |

Review multiple emails from clients containing various documents and comments regarding misrepresentation issues and construction and scope of damage issues

|  | | | | | |
|---|---|---|---|---|---|
| | L120 | A104 | 1.10 | 544.50 | TL |
| | Begin review of file information from Will Smart's office, including Motion to Amend and potential fraud issues in order to address same | | | | |
| | L120 | A103 | 0.60 | 297.00 | TL |
| | Outline strategy to respond to Motion to Amend and demand appraisal | | | | |
| | L120 | A107 | 0.20 | 99.00 | TL |
| | Additional emails with Will Smart's office regarding outstanding discovery issues | | | | |
| | L130 | A108 | 0.70 | 346.50 | TL |
| | Telephone call with Kurt Harjo regarding facts of loss, misrepresentation issues, claims made by USAA and declaration from Harjo to address same | | | | |
| | L120 | A107 | 0.20 | 59.00 | ZS |
| | E-mail to Kurt Harjo regarding the emails that form part of the basis of defendant USAA's Motion to Amend Answer and assert additional affirmative defenses and claims. | | | | |
| | L120 | A104 | 0.80 | 236.00 | ZS |
| | Initial review of file to determine immediate needs of ongoing case due to transition to our firm from previous counsel and evaluate and develop strategies to defend Defendant USAA's Motion to Amend Answer alleging new affirmative defenses. | | | | |
| | L120 | A107 | 0.40 | 118.00 | ZS |
| | Phone call to S. McKeon of Plaintiff's Litigation Group, client's previous counsel, regarding posture and status of this matter as LLG takes over representation. | | | | |
| | L120 | A107 | 0.20 | 59.00 | ZS |
| | Phone call to opposing counsel DKM Law Group's office to verify appropriate contact information for purpose of taking over representation of Plaintiff's in this matter. | | | | |
| | L120 | A101 | 0.40 | 58.00 | LW |
| | Prepare and review file materials received from client for initial case analysis by the attorney. | | | | |
| Oct-15-20 | L110 | A101 | 0.90 | 400.50 | EN |
| | Draft and supplement Notice of 30(b)(6) Deposition, outline Subpoena Duces Tecum to Lawless,, and draft of Appraisal Letter; | | | | |

| | | | | |
|---|---|---|---|---|
| L110<br>Draft proposed Opposition to Motion for Leave to Amend with Cross-Motion to Stay and Compel Appraisal; | A101 | 1.10 | 489.50 | EN |
| L110<br>Telephone call to D. Gaouette verifying D. Lucarell's participation as Appraiser; | A101 | 0.20 | 89.00 | EN |
| L110<br>Review and execute Notice of Appearance; | A101 | 0.10 | 44.50 | EN |
| L120<br>Meet with client at loss location to inspect loss and go over facts of loss | A106 | 1.20 | 594.00 | TL |
| L120<br>Telephone call with Will Smart regarding his Declaration | A107 | 0.30 | 148.50 | TL |
| L120<br>Follow up calls with clients regarding potential counterclaim by insurance company and inspection | A106 | 0.30 | 148.50 | TL |
| L120<br>Telephone call from USAA's counsel regarding inspection and Motion to Amend | A107 | 0.20 | 99.00 | TL |
| L130<br>Telephone call with Kurt Harjo regarding his Declaration | A108 | 0.40 | 198.00 | TL |
| L130<br>Draft Declaration of Kurt Harjo | A108 | 0.90 | 445.50 | TL |
| L130<br>Draft Declaration of Cooper Engst | A108 | 0.80 | 396.00 | TL |
| L120<br>Multiple phone calls with Paige Lewis in order to obtain necessary files and documentation for taking of clients' representation. | A107 | 0.40 | 118.00 | ZS |
| L120<br>Supplement and revise draft letter to Defendant USAA invoking Appraisal under the subject policy. | A103 | 0.20 | 59.00 | ZS |
| L120<br>Begin review of files provided by Client's prior counsel to further develop strategy, specifically related to discovery needs. | A104 | 0.70 | 206.50 | ZS |

| | | | | |
|---|---|---|---|---|
| | L330        A103 | 0.40 | 118.00 | ZS |
| | Draft and revise Notice of 30(b)(6) deposition of USAA designee tbd for purpose of developing strategies to defend USAA allegations against the Engsts. | | | |
| | L210        A103 | 0.20 | 29.00 | JST |
| | Draft Notice of Appearance for E. Neal; | | | |
| | L310        A103 | 0.20 | 29.00 | JST |
| | Draft Plaintiff's First Supplement to Initial Disclosures; | | | |
| | L120        A101 | 0.60 | 87.00 | TG |
| | Prepare voluminous file information received from Plaintiff Litigation Group for initial review by attorneys | | | |
| | L210        A103 | 0.10 | 14.50 | TG |
| | Supplement Declaration of Kurt Harjo | | | |
| | L210        A103 | 0.10 | 14.50 | TG |
| | Supplement Declaration of Cooper Engst | | | |
| | L330        A103 | 0.20 | 29.00 | TG |
| | Finalize letter and 30(b)(6) deposition notice to USAA, as well as send the same to USAA's counsel | | | |
| Oct-16-20 | L110        A101 | 0.40 | 178.00 | EN |
| | Draft and supplement Lawless subpoena; | | | |
| | L110        A101 | 1.10 | 489.50 | EN |
| | Continued outlining opposition to Motion for Leave to Ammend | | | |
| | L110        A101 | 2.20 | 979.00 | EN |
| | Appear for site inspection; | | | |
| | L120        A109 | 1.60 | 792.00 | TL |
| | Site inspection | | | |
| | L120        A103 | 0.40 | 198.00 | TL |
| | Draft letter to USAA's counsel regarding inspection | | | |
| | L130        A108 | 0.30 | 148.50 | TL |
| | Telephone calls with Jim Reed regarding potential bad faith expert | | | |

| L210 | A103 | | | |
|------|------|------|------|------|
| Draft Declaration of Wes Snowden | | 0.30 | 148.50 | TL |
| L210 | A103 | | | |
| Draft Declaration of McBride | | 0.50 | 247.50 | TL |
| L210 | A103 | | | |
| Continue to revise and supplement Declarations | | 0.80 | 396.00 | TL |
| L120 | A104 | | | |
| Review and analyze pertinent documents including repair estimates for Charter, Harjo and corresponding notes for purpose of compiling into hot document folder. | | 0.80 | 236.00 | ZS |
| L120 | A104 | | | |
| Review and analyze discovery, specifically 30(b)(6) notices Interrogatories to USAA, completed by Ruiz & Smart for purpose of evaluating and developing strategy. | | 2.40 | 708.00 | ZS |
| L310 | A104 | | | |
| Review and analyze Ruiz & Smart's Plaintiff's Initial Disclosures for purpose of identifying witnesses and documents, and Defendant USAA's Initial Disclosures. | | 0.40 | 118.00 | ZS |
| L330 | A103 | | | |
| Supplement and revise draft Deposition Notice to Defense expert Mark Lawless. | | 0.20 | 59.00 | ZS |
| L330 | A103 | | | |
| Supplement and revise draft Subpoena Duces Tecum and Exhibit A listing requested production to Defense expert Mark Lawless. | | 0.20 | 59.00 | ZS |
| L330 | A104 | | | |
| Review and analyze exhibits of deposition of David Allen Glover. | | 0.60 | 177.00 | ZS |
| L390 | A104 | | | |
| Attend site inspection at the subject property pursuant to USAA's Fed Rule 34(b) request. | | 1.10 | 324.50 | ZS |
| L120 | A101 | | | |
| Review materials received from clients and prepare binder of former communications between counsel for Z. Smith and T. Lether's review; | | 0.80 | 116.00 | JST |

|  | | | | |
|---|---|---|---|---|
| | L330     A103 | | | |
| | Draft Subpoena Duces Tecum and accompanying Exhibit A to Mark Lawless | 0.40 | 58.00 | TG |
| | L330     A103 | | | |
| | Draft Notice of Deposition and Subpoena to Appear and Testify to Mark Lawless | 0.20 | 29.00 | TG |
| | L210     A104 | | | |
| Oct-17-20 | Review and analyze docket pleadings, specifically Complaint, Answer. | 0.40 | 118.00 | ZS |
| | L310     A104 | | | |
| | Review and analyze USAA Discovery Responses and Amended Discovery Responses to Plaintiff's First Interrogatories issued by Ruiz & Smart. | 1.30 | 383.50 | ZS |
| | L330     A104 | | | |
| Oct-18-20 | Review and analyze 30(b)(6) deposition transcript of Clara Ramirez conducted by Ruiz & Smart for purpose of evaluating discovery strategy. | 1.70 | 501.50 | ZS |
| | L110     A101 | | | |
| Oct-19-20 | Correspondence with counsel regarding the new CR 30(b)(6) Notice and request for Rule 26 Conference of Counsel; | 0.40 | 178.00 | EN |
| | L110     A101 | | | |
| | Further analysis of the prior discovery conducted by W. Smart for new and updated requests; | 0.40 | 178.00 | EN |
| | L110     A101 | | | |
| | Outline scope of Notice of Deposition to be directed to ALE Solutions; | 0.10 | 44.50 | EN |
| | L110     A101 | | | |
| | Review and analyze the proposed Second Amended Answer for response in objections to the new deposition; | 0.20 | 89.00 | EN |
| | L110     A101 | | | |
| | Telephone call with K. Harjo regarding status; | 0.20 | 89.00 | EN |
| | L110     A101 | | | |
| | Follow-up correspondence with K. Harjo regarding discussion with USAA and the 40% profit margin; | 0.20 | 89.00 | EN |
| | L110     A101 | | | |
| | Draft and supplement the letter to counsel re site inspection; | 0.20 | 89.00 | EN |

| L110 | A101 | 0.80 | 356.00 | EN |
|------|------|------|--------|-----|
| Continued development of the Opposition to the Motion for Leave to Amend; | | | | |
| L120 | A108 | 0.60 | 297.00 | TL |
| Telephone call with McBride Construction regarding testimony from same | | | | |
| L210 | A103 | 0.20 | 99.00 | TL |
| Revise McBride Declaration | | | | |
| L210 | A103 | 0.40 | 198.00 | TL |
| Continue to redraft Harjo Declaration | | | | |
| L210 | A106 | 0.20 | 99.00 | TL |
| Emails with clients regarding Declarations | | | | |
| L210 | A103 | 0.20 | 99.00 | TL |
| Finalize Wes Snowden's Declaration | | | | |
| L210 | A108 | 0.30 | 148.50 | TL |
| Telephone call with Will Smart regarding his Declaration | | | | |
| L120 | A104 | 0.30 | 88.50 | ZS |
| E-mails between counsel regarding scope of 30(b)(6) deposition topics and appraisal pending potential appraisal. | | | | |
| L120 | A104 | 1.30 | 383.50 | ZS |
| Review and analyze correspondence, pleadings, and Court's Order on Plaintiff's Motion to Compel to evaluate and develop procedural history regarding scope of discoverable 30(b)(6) testimony. | | | | |
| L120 | A103 | 0.80 | 236.00 | ZS |
| Draft and revise update regarding analysis of procedural history and development of scope of discoverable 30(b)(6) testimony of USAA. | | | | |
| L320 | A104 | 2.10 | 619.50 | ZS |
| Review and analyze file provided by Ruiz & Smart, and compile all communications between USAA/their representatives and our clients/their representatives for purpose of developing comprehensive timeline. | | | | |
| L320 | A104 | 1.90 | 560.50 | ZS |
| Further review and analyze file provided by Ruiz & Smart, and compile all communications between USAA/their | | | | |

representatives and our clients/their representatives for purpose of developing comprehensive timeline.

| Date | Code | Activity | Description | Hours | Amount | Atty |
|---|---|---|---|---|---|---|
| | L330 | A104 | Review and analyze correspondence from opposing counsel objecting to further 30(b)(6) testimony from USAA and the basis for objecting. | 0.50 | 147.50 | ZS |
| | L330 | A103 | Draft and prepare 30(b)(6) package to be issued to ALE Solutions, Inc. seeking testimony and production of files related to client's claim. | 0.80 | 236.00 | ZS |
| | L120 | A101 | Continue to prepare and finalize binder of prior counsel communications for attorney review; | 0.30 | 43.50 | JST |
| | L130 | A108 | Telephone call with Wes Snowden of Charter Construction of his Declaration | 0.10 | 14.50 | TG |
| | L130 | A108 | Follow up email with Wes Snowden regarding his Declaration | 0.10 | 14.50 | TG |
| | L130 | A108 | Email with John Niederegger regarding his Declaration | 0.10 | 14.50 | TG |
| | L130 | A108 | Email with Kurt Harjo regarding his Declaration | 0.10 | 14.50 | TG |
| Oct-20-20 | L210 | A108 | Telephone call with Harjo regarding his Declaration | 0.30 | 148.50 | TL |
| | L210 | A108 | Follow up call from Harjo regarding demand from USAA and potential lawsuit against Harjo | 0.20 | 99.00 | TL |
| | L210 | A108 | Telephone call with Harjo's counsel regarding Harjo Declaration and potential USAA suit | 0.60 | 297.00 | TL |
| | L210 | A106 | Telephone call with clients regarding latest developments of Harjo | 0.10 | 49.50 | TL |

| | | | | |
|---|---|---|---|---|
| L210 | A108 | 0.20 | 99.00 | TL |
| Telephone call with Will Smart regarding latest Harjo developments and his Declaration | | | | |
| L210 | A103 | 0.30 | 148.50 | TL |
| Continue to revise Harjo Declaration based upon additional information provided by Harjo | | | | |
| L120 | A104 | 1.20 | 354.00 | ZS |
| Review and analyze e-mail correspondence between USAA, Clients, and their representatives contained in file provided Ruiz & Smart for purpose of succinct chronological ordering of correspondence. | | | | |
| L120 | A104 | 1.60 | 472.00 | ZS |
| Review and analyze correspondence between USAA, Clients, and their representatives contained in file provided Ruiz & Smart for purpose of succinct chronological ordering of correspondence. | | | | |
| L120 | A104 | 1.40 | 413.00 | ZS |
| Review and analyze timelines in file Ruiz & Smart created by prior counsel and Clients for purpose of developing factual recitation incorporated into draft Response to USAA's Motion to Amend Amended Answer. | | | | |
| L120 | A104 | 0.80 | 236.00 | ZS |
| Continue to review and analyze timelines in file Ruiz & Smart created by prior counsel and Clients for purpose of developing factual recitation incorporated into draft Response to USAA's Motion to Amend Amended Answer. | | | | |
| L330 | A103 | 0.40 | 118.00 | ZS |
| Supplement and revise 30(b)(6) correspondence and subpoenas to ALE Solutions, Inc. | | | | |
| L330 | A103 | 0.70 | 206.50 | ZS |
| Supplement and revise Exhibit A 30(b)(6) Deposition Notice to ALE Solutions, Inc. to include all topics designee  is expected to person most knowledgeable about. | | | | |
| L330 | A103 | 0.40 | 118.00 | ZS |
| Supplement and revise Exhibit B 30(b)(6) Deposition Subpoena to ALE Solutions, Inc. to include all requested documentation to be produced. | | | | |
| L120 | A108 | 0.10 | 14.50 | TG |
| Telephone call with Kurt Harjo regarding his Declaration | | | | |

| | | | | |
|---|---|---|---|---|
| | L110                      A101 | | | |
| Oct-21-20 | Draft Amended Notice of FRCP 30(b)(6) deposition to USAA; | 0.30 | 133.50 | EN |
| | L110                      A101 | | | |
| | Correspondence with counsel regarding the discovery conference; | 0.10 | 44.50 | EN |
| | L110                      A101 | | | |
| | Correspondence with counsel regarding amended Notice of 30(b)(6) deposition; | 0.20 | 89.00 | EN |
| | L110                      A101 | | | |
| | Supplement the subpoena and deposition notice to M. Lawless; | 0.60 | 267.00 | EN |
| | L110                      A101 | | | |
| | Correspondence with all counsel regarding additional issue for discovery conference re production of documents; | 0.20 | 89.00 | EN |
| | L110                      A101 | | | |
| | Draft and supplement the proposed Response in Opposition to Motion for Leave to Amend and Cross-Motion to Stay and Compel Appraisal; | 2.60 | 1,157.00 | EN |
| | L120                      A103 | | | |
| | Draft correspondence to insurer's counsel regarding efforts in trying to resolve claim and rejection by USAA of same | 0.30 | 148.50 | TL |
| | L120                      A106 | | | |
| | Telephone call with client regarding status and additional comments and questions regarding Declarations and status of litigation | 0.40 | 198.00 | TL |
| | L130                      A108 | | | |
| | Telephone call with Steve Williams regarding retention of same and specifics of retention | 0.30 | 148.50 | TL |
| | L130                      A108 | | | |
| | Email Williams regarding specifics of retention | 0.20 | 99.00 | TL |
| | L210                      A108 | | | |
| | Telephone call with Will Smart regarding his Declaration | 0.60 | 297.00 | TL |
| | L210                      A108 | | | |
| | Telephone call with McBride regarding their Declaration | 0.20 | 99.00 | TL |
| | L210                      A108 | | | |
| | Telephone call with Harjo's counsel regarding Declaration | 0.20 | 99.00 | TL |

| Date | Task/Activity | Description | Hours | Amount | Initials |
|---|---|---|---|---|---|
| | L210 A103 | Continue to redraft Will Smart's Declaration | 0.20 | 99.00 | TL |
| | L210 A104 | Review and analyze draft Motion Opposing USAA's Motion to Amend Amended Answer and compile evidence cited in brief. | 0.60 | 177.00 | ZS |
| | L320 A104 | Review and analyze Defendant USAA's production, specifically review voicemails left by USAA for Plaintiffs for evidence that USAA ever requested specific contractor estimates. | 0.30 | 88.50 | ZS |
| | L330 A104 | Review and analyze deposition of David Allen Glover in preparation for draft declarations of client and upcoming briefing. | 2.10 | 357.00 | ZS |
| | L330 A104 | Review and analyze deposition of 30(b)(6) Charles Herbst in preparation for draft declarations of client and upcoming briefing. | 1.20 | 204.00 | ZS |
| | L330 A104 | Review and analyze deposition of 30(b)(6) Natasha Edwards in preparation for draft declarations of client and upcoming briefing. | 1.30 | 221.00 | ZS |
| | L330 A104 | Review and analyze deposition of 30(b)(6) Clara Ramirez in preparation for draft declarations of client and upcoming briefing. | 1.30 | 221.00 | ZS |
| | L120 A101 | Prepare Dropbox of entire file information, as well as email the same to clients | 0.20 | 29.00 | TG |
| | L330 A104 | Review and finalize Amended 30(b)(6) Deposition Notice to Defendant USAA, as well as send the same to USAA's counsel | 0.10 | 14.50 | TG |
| | L330 A104 | Review, revise, and supplement Mark Lawless's subpoena, as well as send the same to USAA's counsel | 0.30 | 43.50 | TG |
| Oct-22-20 | L110 A101 | Draft and finalize initial draft of the Opposition to Motion for Leave to Compel and Cross-Motion to Compel Appraisal; | 2.70 | 1,201.50 | EN |
| | L110 A101 | Telephone conference with counsel re objection to second CR 30(b)(6) deposition; | 0.30 | 133.50 | EN |

| | | | | |
|---|---|---|---|---|
| L110 | A101 | | | |
| Follow-up call with M. O'Connor regarding Appraisal; | | 0.20 | 89.00 | EN |
| L110 | A101 | | | |
| Draft and supplement updated version of Brief in Opposition to Motion for Leave; | | 1.90 | 845.50 | EN |
| L110 | A101 | | | |
| Draft separate Motion to Stay and Compel Appraisal; | | 0.40 | 178.00 | EN |
| L120 | A107 | | | |
| Correspondence to opposing counsel regarding copies of phone transcripts | | 0.20 | 99.00 | TL |
| L130 | A108 | | | |
| Emails with Steve Williams regarding expert reports and deadlines, as well as provide additional information from client | | 0.30 | 148.50 | TL |
| L130 | A108 | | | |
| Telephone call with Jim Reed regarding facts of loss, his preliminary opinion on bad faith issues, and preparation of his expert report | | 0.70 | 346.50 | TL |
| L210 | A107 | | | |
| Telephone call with Harjo's counsel regarding Declaration | | 0.20 | 99.00 | TL |
| L210 | A104 | | | |
| Review Harjo's revised Declaration and changes provided by Harjo and address comments and notes to same with further revisions to Declaration | | 0.70 | 346.50 | TL |
| L210 | A103 | | | |
| Finalize Harjo's Declaration | | 0.40 | 198.00 | TL |
| L210 | A108 | | | |
| Follow up emails with Harjo and his counsel regarding Declaration | | 0.20 | 99.00 | TL |
| L210 | A108 | | | |
| Telephone call with McBride Construction regarding their Declaration and changes to same | | 0.30 | 148.50 | TL |
| L210 | A104 | | | |
| Review McBride Declaration and incorporate notes into same. Time includes finalizing Declaration and revising additional language | | 0.70 | 346.50 | TL |
| L210 | A108 | | | |
| Emails with Charter Construction regarding Wes Snowden's Declaration | | 0.20 | 99.00 | TL |

| | | | | |
|---|---|---|---|---|
| L210 | A108 | 0.30 | 148.50 | TL |
| Telephone call with Will Smart regarding his Declaration | | | | |
| L210 | A104 | 0.60 | 297.00 | TL |
| Review changes to Will Smart's Declaration proposed by client and redraft Declaration to address client's concerns | | | | |
| L210 | A108 | 0.40 | 198.00 | TL |
| Telephone call with Will Smart regarding client's changes to his Declaration | | | | |
| L210 | A106 | 0.40 | 198.00 | TL |
| Follow up calls with client regarding status on all Declarations, including Smart's changes | | | | |
| L210 | A103 | 0.30 | 148.50 | TL |
| Finalize Smart's Declaration | | | | |
| L210 | A103 | 1.30 | 643.50 | TL |
| Continue to draft brief regarding response to Motion to Amend | | | | |
| L210 | A103 | 0.60 | 297.00 | TL |
| Supplement brief regarding response to Motion to Amend with additional arguments | | | | |
| L390 | A107 | 0.40 | 198.00 | TL |
| Conduct discovery conference with opposing counsel regarding 30(b)(6) deposition of USAA and other discovery issues | | | | |
| L120 | A104 | 2.10 | 619.50 | ZS |
| Review and analyze Washington and Federal case law regarding execution searches parte contact with expert witnesses, tampering with expert witnesses. | | | | |
| L210 | A104 | 0.30 | 88.50 | ZS |
| Prepare exhibits for Declaration of Eric Neal In Support of Motion to Stay Litigation and Compel Appraisal. | | | | |
| L320 | A104 | 1.40 | 413.00 | ZS |
| Review and analyze Defendant USAA's Production document bates no. Engst_CF_0001-1371 specifically communications with USAA to determine if USAA ever requested specific contractor estimate information. | | | | |
| L320 | A104 | 0.40 | 118.00 | ZS |
| Review and analyze Defendant USAA's Production document bates no. Engst_CF_1372-1431 specifically | | | | |

communications with USAA to determine if
USAA ever requested specific contractor estimate
information.

| | | | | |
|---|---|---|---|---|
| | L320                    A104 | | | |
| | Review and analyze Defendant USAA's Production document bates no. Engst_Confidential_0001-971, specifically communications with USAA to determine if USAA ever requested specific contractor estimate information. | 0.90 | 265.50 | ZS |
| | L320                    A104 | | | |
| | Review and analyze Defendant USAA's Production document bates no. Engst_0972-3684, specifically communications with USAA to determine if USAA ever requested specific contractor estimate information. | 2.40 | 708.00 | ZS |
| Oct-23-20 | L110                    A101 | | | |
| | Continued drafting and revising Opposition to Motion for Leave to Amend; | 2.40 | 1,068.00 | EN |
| | L110                    A101 | | | |
| | Further drafting of the Motion to Stay and Compel Appraisal; | 0.60 | 267.00 | EN |
| | L210                    A103 | | | |
| | Continue to work on Reply brief in opposition to Motion to Amend | 0.80 | 396.00 | TL |
| | L210                    A103 | | | |
| | Continue to draft Harjo Declaration | 0.40 | 198.00 | TL |
| | L210                    A107 | | | |
| | Multiple telephone calls with Harjo's counsel regarding Declaration of Harjo | 0.40 | 198.00 | TL |
| | L210                    A107 | | | |
| | Emails with Harjo's counsel regarding Declaration of Harjo | 0.20 | 99.00 | TL |
| | L210                    A108 | | | |
| | Telephone call with McBride regarding their Declaration | 0.10 | 49.50 | TL |
| | L210                    A103 | | | |
| | Continue to draft Motion to Compel and Motion to Stay | 1.20 | 594.00 | TL |

| | | | | |
|---|---|---|---|---|
| L210 | A104 | 0.40 | 198.00 | TL |
| Review and respond to multiple emails from clients regarding changes to briefing and Declarations | | | | |
| L210 | A103 | 0.40 | 118.00 | ZS |
| Supplement and revise draft declaration of Robert Cooper Engst in support of Opposition Brief to Defendant's Motion to Amend. | | | | |
| L210 | A103 | 0.30 | 88.50 | ZS |
| Draft and revise Declaration of Eric Neal in Support of Motion to Stay Litigation and Compel Appraisal. | | | | |
| L210 | A106 | 0.10 | 29.50 | ZS |
| Email to clients draft proposed Motion to Stay and Compel for their review and revisions. | | | | |
| L320 | A104 | 1.30 | 383.50 | ZS |
| Review and analyze Plaintiff's Production  bates no. Engst_1- 772, specifically communications with USAA to determine if USAA ever requested specific contractor estimate information. | | | | |
| L320 | A104 | 2.40 | 708.00 | ZS |
| Review and analyze Plaintiff's document Production bates no._773-2467 specifically communications with USAA to determine if USAA ever requested specific contractor estimate information. | | | | |
| L320 | A104 | 0.40 | 118.00 | ZS |
| Review and analyze Plaintiff's document Production bates no._2471-2566, specifically communications with USAA to determine if USAA ever requested specific contractor estimate information. | | | | |
| L320 | A104 | 1.90 | 560.50 | ZS |
| Review and analyze Defendant USAA's Production document bates no. Engst_UW_001-125 and Engst Xact_0001-1324, specifically communications with USAA to determine if USAA ever requested specific contractor estimate information. | | | | |
| L320 | A103 | 1.30 | 383.50 | ZS |
| Review and analyze documents supplied by Plaintiffs to Ruiz & Smart but have not been produced in discovery yet, specifically compiling text messages between USAA and our client. | | | | |

| | | | | |
|---|---|---|---|---|
| | L330                      A107 | | | |
| | Multiple phone calls with Paige Lewis of Ruiz & Smart regarding discovery materials and discuss documents not produced. | 0.60 | 177.00 | ZS |
| | L110                      A101 | | | |
| Oct-26-20 | Draft and supplement the proposed Motion to Stay and Compel Appraisal; | 0.90 | 400.50 | EN |
| | L110                      A101 | | | |
| | Draft and supplement the opposition to USAA's Motion for Leave to Amend; | 2.10 | 934.50 | EN |
| | L210                      A103 | | | |
| | Continue to revise and supplement Reply brief in opposition to Motion to Amend | 1.30 | 643.50 | TL |
| | L210                      A107 | | | |
| | Multiple emails with Harjo's counsel regarding Harjo Declaration and execution of same | 0.60 | 297.00 | TL |
| | L210                      A104 | | | |
| | Review final version of Harjo Declaration | 0.30 | 148.50 | TL |
| | L210                      A103 | | | |
| | Provide additional revised versions of Harjo Declaration and continue to redraft same | 0.40 | 198.00 | TL |
| | L210                      A103 | | | |
| | Finalize Declaration of Eric Neal in regard to Motion to Compel Appraisal | 0.30 | 148.50 | TL |
| | L210                      A103 | | | |
| | Finalize Motion to Compel Appraisal | 0.40 | 198.00 | TL |
| | L210                      A104 | | | |
| | Confirm all exhibits to Reply in opposition to Motion to Amend | 0.60 | 297.00 | TL |
| | L210                      A107 | | | |
| | Phone call to Counsel for Kurt Harjo, Mike Deleo, regarding his declaration in support of Plaintiffs' Response Opposing USAA's Motion to Amend. | 0.20 | 59.00 | ZS |
| | L210                      A107 | | | |
| | Phone call to Counsel for Kurt Harjo, Mike Deleo, regarding his declaration in support of Plaintiffs' Response Opposing USAA's Motion to Amend. | 0.20 | 59.00 | ZS |

| | | | | |
|---|---|---|---|---|
| L210 | A107 | 0.40 | 118.00 | ZS |

Multiple phone calls with Kurt Harjo's assistant regarding his declaration in support of Plaintiffs' Response Opposing USAA's Motion to Amend.

| | | | | |
|---|---|---|---|---|
| L210 | A106 | 0.20 | 59.00 | ZS |

Phone call to client Cooper Engst regarding suggestions and revisions to his draft Declaration in Support of Plaintiffs' Response Opposing USAA's Motion to Amend.

| | | | | |
|---|---|---|---|---|
| L210 | A106 | 0.20 | 59.00 | ZS |

Phone call to client Cooper Engst regarding suggestions and revisions to his draft Declaration in Support of Plaintiffs' Response Opposing USAA's Motion to Amend.

| | | | | |
|---|---|---|---|---|
| L210 | A103 | 1.10 | 324.50 | ZS |

Supplement and revise Plaintiffs' Response Opposing USAA's Motion to Amend to incorporate factual revisions suggest by C. Engst and reflect changes to various supporting Declarations.

| | | | | |
|---|---|---|---|---|
| L210 | A103 | 1.30 | 383.50 | ZS |

Supplement and revise Declaration of Robert Cooper Engst in Support of Plaintiffs' Response Opposing USAA's Motion to Amend to incorporate factual revisions suggested by C. Engst and reflect changes to draft Brief as well as K. Harjo's Declaration.

| | | | | |
|---|---|---|---|---|
| L210 | A103 | 0.30 | 88.50 | ZS |

Supplement and revise draft Plaintiffs' Motion to Stay Litigation and Compel Appraisal to reflect revisions to concurrently filed briefing.

| | | | | |
|---|---|---|---|---|
| L210 | A104 | 1.20 | 354.00 | ZS |

Prepare, compile, and verify corresponding exhibits to proposed Declaration of Robert Cooper Engst to reflect revisions to Declaration and Briefing.

| | | | | |
|---|---|---|---|---|
| L210 | A104 | 0.60 | 177.00 | ZS |

Prepare, compile, and verify corresponding exhibits to proposed Declaration of Eric in Support of Plaintiffs' Response Brief to reflect revisions to various Declarations and Briefing.

| | | | | |
|---|---|---|---|---|
| L210 | A104 | 0.40 | 118.00 | ZS |

Prepare, compile, and verify corresponding exhibits to proposed Declaration of Eric in Support of Plaintiffs' Motion to Stay Litigation and Compel Appraisal to reflect revisions to various Declarations and Briefing.

| L210 | A103 | 0.60 | 177.00 | ZS |
|---|---|---|---|---|

Supplement and revise Declaration of Eric Neal in Support of Plaintiffs' Response Opposing USAA's Motion to Amend to reflect further factual development and changes to draft Brief as well as various Declarations.

| L210 | A103 | 0.30 | 88.50 | ZS |
|---|---|---|---|---|

Supplement and revise Declaration of Eric Neal in Support of Plaintiffs' Motion to Stay Litigation and Compel Appraisal to reflect further factual development and changes to Briefing and various Declarations.

| L210 | A106 | 0.20 | 59.00 | ZS |
|---|---|---|---|---|

Phone call to client Cooper Engst regarding suggestions and revisions to his draft Declaration in Support of Plaintiffs' Response Opposing USAA's Motion to Amend.

| L250 | A103 | 0.20 | 29.00 | JST |
|---|---|---|---|---|

Draft and finalize Proposed Order Granting Plaintiffs' Motion to Stay and Compel;

| L120 | A103 | 0.60 | 87.00 | LH |
|---|---|---|---|---|

Revise and Supplement Opposition to Defendant's Second Motion for Leave to Amend to ensure compliance with local court rules

| L210 | A101 | 0.70 | 101.50 | TG |
|---|---|---|---|---|

Prepare exhibits in order to supplement Plaintiff's Opposition to Defendant's Second Motion for Leave to Amend

| L210 | A104 | 0.60 | 87.00 | TG |
|---|---|---|---|---|

Review and finalize exhibits in order to supplement Declarations in Support of Plaintiff's Opposition to Defendant's Second Motion for Leave to Amend

| L210 | A104 | 0.40 | 58.00 | TG |
|---|---|---|---|---|

Review and finalize Declarations of Eric Neal, John Niederegger, Kurt Harjo, Robert Engst, Wes Snowden, and Will Smart in order to supplement Plaintiff's Opposition to Defendant's Second Motion for Leave to Amend

| L210 | A104 | 0.40 | 58.00 | TG |
|---|---|---|---|---|

Review, supplement, and finalize Plaintiff's Opposition to Defendant's Second Motion for Leave to Amend, as well as making sure filing is in compliance with Federal Civil Rules

| | | | | |
|---|---|---|---|---|
| L210 | A104 | 0.30 | 43.50 | TG |
| Supplement and finalize Eric Neal Declaration and exhibits thereto in order to supplement Plaintiffs' Motion to Stay Litigation and Compel Appraisal | | | | |
| L210 | A104 | 0.30 | 43.50 | TG |
| Review, supplement, and finalize Plaintiffs' Motion to Stay Litigation and Compel Appraisal and Proposed Order to the Motion, as well as making sure filing is in compliance with Federal Civil Rules | | | | |
| L210 | A108 | 0.10 | 14.50 | TG |
| Email Judge's chambers regarding proposed Order of Motion to Stay Litigation and Compel Appraisal, as required by the Federal Court rules | | | | |

Oct-27-20

| | | | | |
|---|---|---|---|---|
| L120 | A104 | 0.20 | 99.00 | TL |
| Review correspondence from USAA declining appraisal and outline response to same | | | | |
| L120 | A104 | 0.40 | 198.00 | TL |
| Review Reservation of Rights letter from USAA and outline response to same | | | | |
| L120 | A107 | 0.20 | 99.00 | TL |
| Follow up call from Harjo's counsel regarding pleadings filed by Engst and Harjo Declaration | | | | |
| L120 | A107 | 0.30 | 148.50 | TL |
| Telephone call from Will Smart regarding briefing involving Motion to Compel Appraisal and Reply in Opposition to Motion to Amend | | | | |
| L310 | A103 | 1.10 | 544.50 | TL |
| Draft Request for Admissions to be served on USAA | | | | |
| L120 | A104 | 0.40 | 118.00 | ZS |
| Review and analyze correspondence from Counsel for USAA, specifically Reservation of Rights letter to Engsts and letter denying request to invoke Appraisal. | | | | |
| L310 | A104 | 0.60 | 177.00 | ZS |
| Review and analyze USAA's Second Requests for Production to Cooper Engst and to Anna for purpose outlining objections and answers thereto. | | | | |
| L310 | A104 | 0.40 | 118.00 | ZS |
| Review and analyze USAA's second Interrogatories to Cooper Engst and to Anna | | | | |

Engst for purpose of outlining objections and answers thereto.

| | | | | |
|---|---|---|---|---|
| L310 | A104 | | | |
| Review and analyze USAA's Requests for Admission to Cooper Engst, and Requests for Admission to Anna Engst for duplicate requests and potential pit fall requests, and to outline objections and answers thereto. | | 1.60 | 472.00 | ZS |
| L310 | A104 | | | |
| Review, analyze, and cross reference Plaintiffs' prior document production with allegations made in USAA's second set of discovery requests to Plaintiffs. | | 0.60 | 177.00 | ZS |
| L330 | A104 | | | |
| Review and analyze case law and statutes, Federal, Illinois, and Washington regarding subpoenas to companies in foreign jurisdiction companies and requirements necessary for subpoena to ALE Solutions. | | 0.70 | 206.50 | ZS |
| L330 | A103 | | | |
| Supplement and revise draft 30(b)(6) package to ALE Solutions. | | 0.30 | 88.50 | ZS |

Oct-28-20

| | | | | |
|---|---|---|---|---|
| L110 | A101 | | | |
| Draft and supplement the proposed Notice of FRCP 30(b)(6) deposition to ALE Solutions; | | 0.40 | 178.00 | EN |
| L110 | A101 | | | |
| Review new written discovery from USAA and begin outlining objections and Answers; | | 0.90 | 400.50 | EN |
| L120 | A106 | | | |
| Conference call with clients regarding status on multiple issues | | 0.30 | 148.50 | TL |
| L120 | A106 | | | |
| Telephone call with clients regarding status, mediation potential, and retention of Williams | | 0.30 | 148.50 | TL |
| L130 | A108 | | | |
| Telephone call with expert Steve Williams regarding retention of same and scope of work and expert services | | 0.30 | 148.50 | TL |
| L130 | A106 | | | |
| Emails with client regarding Williams retention | | 0.10 | 49.50 | TL |
| L130 | A108 | | | |
| Telephone call with experts of McBride regarding retention as expert | | 0.20 | 99.00 | TL |

| | | | | |
|---|---|---|---|---|
| L130 | A108 | 0.20 | 99.00 | TL |
| Telephone call with Wes Snowden regarding retention as expert | | | | |
| L130 | A108 | 0.30 | 148.50 | TL |
| Correspondence to all experts regarding retention and scope of expert witness activities | | | | |
| L130 | A106 | 0.10 | 49.50 | TL |
| Emails with client regarding retention of experts | | | | |
| L160 | A107 | 0.30 | 148.50 | TL |
| Telephone call from USAA counsel regarding potential mediation | | | | |
| L160 | A107 | 0.40 | 198.00 | TL |
| Telephone call from Harjo's counsel regarding potential mediation | | | | |
| L310 | A104 | 0.60 | 297.00 | TL |
| Review voluminous Requests for Admission and Interrogatories and Requests for Production served on client in order to outline responses and objections to same | | | | |
| L120 | A104 | 0.80 | 236.00 | ZS |
| Review and analyze subject policy specially for time limitations related to structure and contents. | | | | |
| L310 | A106 | 0.40 | 118.00 | ZS |
| Phone call to Cooper Engst regarding discovery requests received from USAA and strategies for responding to the same. | | | | |
| L310 | A106 | 0.20 | 59.00 | ZS |
| E-mail to Clients Cooper and Anna Engst copies of discovery request received from USAA and advise of deadlines for each. | | | | |
| L310 | A104 | 0.60 | 177.00 | ZS |
| Review and analyze USAA's second Interrogatories to Cooper Engst and to Anna Engst for purpose of outlining objections and answers thereto. | | | | |
| L310 | A104 | 0.40 | 118.00 | ZS |
| Review and analyze USAA's Second Requests for Production to Cooper Engst and to Anna for purpose outlining objections and answers thereto. | | | | |
| L310 | A104 | 2.20 | 649.00 | ZS |
| Review and analyze USAA's Requests for Admission to Cooper Engst, and Requests for Admission to Anna Engst for duplicate | | | | |

requests and potential pit fall requests, and to
outline objections and answers thereto.

| | L330 | A103 | 0.30 | 88.50 | ZS |
|---|---|---|---|---|---|
| | Supplement and revise Exhibit A to Subpoena to CJ Hawkins to incorporate comprehensive document requests. | | | | |
| | L330 | A104 | 1.60 | 472.00 | ZS |
| | Review and analyze pleadings and depositions to further develop list of individuals involved with the Engsts claim to be deposed in their individual capacity. | | | | |
| | L330 | A103 | 0.20 | 29.00 | TG |
| | Draft Notice of Deposition and Subpoena to Appear and Testify to CJ Hawkins | | | | |
| | L330 | A103 | 0.30 | 43.50 | TG |
| | Draft multiple Notices of Depositions to USAA employees which includes Candice Hawksworth, Jim Linnell, Maureen Swartz, and Sophronia Moore-Samuels | | | | |
| | L330 | A107 | 0.10 | 14.50 | TG |
| | Follow up email to USAA's counsel regarding acceptance of service of Notice of Deposition and Subpoena to Appear on behalf of Mark Lawless | | | | |
| | L120 | A106 | 0.30 | 148.50 | TL |
| Oct-29-20 | Telephone call with client regarding status on multiple issues and fee claims | | | | |
| | L130 | A108 | 0.20 | 99.00 | TL |
| | Telephone call with Wes Snowden regarding expert services | | | | |
| | L160 | A107 | 0.30 | 148.50 | TL |
| | Telephone call with Will Smart regarding status on settlement and mediation | | | | |
| | L340 | A103 | 0.70 | 206.50 | ZS |
| | Draft and revise proposed template for expert witnesses in advance of Nov 23 expert disclosure deadline for contingency that Litigation Stay and Appraisal is not granted. | | | | |
| | L110 | A101 | 0.30 | 133.50 | EN |
| Oct-30-20 | Review the Reply in Support of Motion for Leave to Amend; | | | | |
| | L160 | A106 | 0.60 | 297.00 | TL |
| | Telephone call with client regarding TL opinion on mediation and mediator and | | | | |

preparation for mediation, as well as status on additional pleadings filed by USAA

| | | | | |
|---|---|---|---|---|
| L320 | A104 | 0.30 | 148.50 | TL |
| Review subpoena for records issued to Will Smart | | | | |
| L320 | A107 | 0.20 | 99.00 | TL |
| Telephone calls with Will Smart regarding request for Will Smart's records | | | | |
| L130 | A107 | 0.40 | 118.00 | ZS |
| Phone call from Jim Reed regarding his general impressions of the material he has reviewed to date regarding USAA's handling of Engsts' claim. | | | | |
| L130 | A107 | 0.20 | 59.00 | ZS |
| E-mail to James Reed following up on earlier phone call regarding his impression of this case and setting a meeting time to discuss the same further. | | | | |
| L210 | A104 | 0.40 | 118.00 | ZS |
| Review and analyze USAA's Reply in support of its Motion to Amend Amended Answer. | | | | |
| L310 | A103 | 1.80 | 531.00 | ZS |
| Continue to outline responses to USAA's Requests for Admission to Robert Cooper Engst, specifically cross referencing USAA allegations with documents produced to date. | | | | |
| L310 | A103 | 0.90 | 265.50 | ZS |
| Continue to outline responses to USAA's Requests for Admission to Anna Susan Engst, specifically cross referencing USAA allegations with documents produced to date. | | | | |
| L310 | A103 | 0.70 | 206.50 | ZS |
| Continue to outline responses to USAA's Second Interrogatories to Plaintiffs, specifically Interrogatory No. 22 that interacts and depends on Responses to USAA Requests for Admission. | | | | |
| L310 | A103 | 0.60 | 177.00 | ZS |
| Supplement and revise materials and pleading necessary for expert witness disclosures due on November 23. | | | | |
| L160 | A107 | 0.40 | 198.00 | TL |
| Nov-02-20  Telephone call with USAA's counsel regarding mediation and mediation terms | | | | |

| L160 | A108 | 0.10 | 49.50 | TL |
|---|---|---|---|---|
| Emails with mediator regarding mediation | | | | |

| L320 | A107 | 0.20 | 99.00 | TL |
|---|---|---|---|---|
| Telephone call with Will Smart regarding discovery to Will Smart's firm | | | | |

| L320 | A104 | 0.30 | 148.50 | TL |
|---|---|---|---|---|
| Review discoveries addressed to Will Smart in order to outline objections to same | | | | |

| L330 | A107 | 0.20 | 99.00 | TL |
|---|---|---|---|---|
| Multiple emails with Harjo's counsel regarding discovery request to Harjo | | | | |

| L120 | A104 | 0.30 | 88.50 | ZS |
|---|---|---|---|---|
| Review and analyze package of seven deposition notices and five subpoenas issued by USAA. | | | | |

| L130 | A107 | 1.20 | 354.00 | ZS |
|---|---|---|---|---|
| Prepare and organize and e-mail supplemental material to Jim Reed in multiple emails due to size restrictions on our server, for the purpose of quickly transmitting the material to Mr. Reed who is averse to drop box. | | | | |

| L130 | A107 | 0.70 | 206.50 | ZS |
|---|---|---|---|---|
| Multiple phone calls with Jim Reed regarding his impressions of the case and then follow up phone calls regarding transmittal of supplemental material. | | | | |

| L310 | A104 | 1.40 | 413.00 | ZS |
|---|---|---|---|---|
| Review and analyze documents produced by all parties, and third party contractors, for purpose of developing factual basis for plaintiffs' discovery responses. | | | | |

| L310 | A104 | 0.80 | 236.00 | ZS |
|---|---|---|---|---|
| Review and analyze documents produced by all parties, and third party contractors, for purpose of illustrating inconsistencies and false premises alleged by USAA for purpose of drafting plaintiffs' discovery responses. | | | | |

| L310 | A103 | 1.90 | 560.50 | ZS |
|---|---|---|---|---|
| Draft and revise objections, answers, and responses to USAAs Requests for Admission to Robert Cooper Engst. | | | | |

| L310 | A103 | 1.70 | 501.50 | ZS |
|---|---|---|---|---|
| Supplement and revise objections, answers, and responses to USAAs Requests for Admission to Robert Cooper Engst. | | | | |

| | | | | |
|---|---|---|---|---|
| | L330                    A107 | 0.20 | 29.00 | JST |
| | Finalize subpoena to ALE; correspondence to opposing counsel regarding same; | | | |
| Nov-03-20 | L130                    A108 | 0.30 | 148.50 | TL |
| | Telephone call with multiple expert witnesses to retain same and respond to subpoena being issued | | | |
| | L160                    A107 | 0.40 | 198.00 | TL |
| | Multiple emails with Harjo's counsel and USAA's counsel regarding mediation | | | |
| | L320                    A107 | 0.40 | 198.00 | TL |
| | Telephone calls with Will Smart regarding response to subpoena issued to same | | | |
| | L320                    A103 | 0.40 | 198.00 | TL |
| | Draft objection and response to subpoena issued to Smart | | | |
| | L120                    A107 | 0.60 | 177.00 | ZS |
| | Phone call with Client providing updates about mediation, discovery, upcoming depositions, and other general issues related to their case. | | | |
| | L120                    A104 | 0.40 | 118.00 | ZS |
| | Review and analyze recent correspondence Defense Counsel regarding deadlines and potential extensions related to mediation and expert disclosures. | | | |
| | L130                    A107 | 0.20 | 59.00 | ZS |
| | Phone calls with potential expert withness Jerry Hartmann, ultimately not able to be our expert as he is retained by the Defense. | | | |
| | L310                    A104 | 0.30 | 88.50 | ZS |
| | E-mail from clients related to scope of discovery and general concerns regarding disclosure of unrelated material and absuive nature of USAA's tactics in discovery to date. | | | |
| | L310                    A104 | 1.60 | 472.00 | ZS |
| | Supplement and revise draft Cooper Engsts' objections, responses, and answers to discovery responses, specifically object each instance that a requests is based on a false premise. | | | |
| | L310                    A104 | 1.40 | 413.00 | ZS |
| | Continue to supplement and revise draft Cooper Engsts' objections, responses, and answers to discovery responses, specifically object each instance that a requests is based on a false premise. | | | |

| | | | | |
|---|---|---|---|---|
| L310 | A103 | 1.30 | 383.50 | ZS |
| Further review and analyze court pleadings, both party's document production, and production responsive to USAA's SBT to contractors to further develop factual basis and supporting documentation for Plaintiffs' discovery respsonses. | | | | |
| L310 | A103 | 1.80 | 531.00 | ZS |
| Review and analyze court pleadings, both party's document production, and production responsive to USAA's SBT to contractors to further develop factual basis and supporting documentation for Plaintiffs' discovery respsonses. | | | | |

| | | | | | |
|---|---|---|---|---|---|
| Nov-04-20 | L130 | A108 | 0.60 | 297.00 | TL |
| | Conference call with expert Jim Reed regarding his opinions | | | | |
| | L130 | A108 | 0.30 | 148.50 | TL |
| | Contact with additional bad faith experts given Reed's withdrawal | | | | |
| | L160 | A103 | 1.10 | 544.50 | TL |
| | Draft mediation letter | | | | |
| | L120 | A104 | 0.40 | 118.00 | ZS |
| | Review and analyze case law and statutes related to depositions limits and whether records deposition are considered against the limit. | | | | |
| | L130 | A107 | 0.20 | 59.00 | ZS |
| | Phone call to Steve Strzelec regarding potential retention as bad faith expert in this matter. | | | | |
| | L130 | A107 | 0.20 | 59.00 | ZS |
| | Phone call from Steve Strzelec regarding his availability and ability to be bad faith expert in this matter. | | | | |
| | L130 | A107 | 0.40 | 118.00 | ZS |
| | Phone conference with Jim Reed and Tom Lether to discuss Jim's general impressions after careful review of material sent to him | | | | |
| | L130 | A107 | 0.20 | 59.00 | ZS |
| | Email to Steve Strzelec to follow up phone call requesting his availabilty regarding potential retention as an expert witness in this matter. | | | | |

| Task | Activity | Hours | Amount | Initials |
|---|---|---|---|---|
| L160 | A103 | 0.10 | 29.50 | ZS |
| Email to clients regarding preparations for their potential mediation likely to occur on Monday Nov. 9. | | | | |
| L210 | A103 | 0.60 | 177.00 | ZS |
| Supplement and revise draft Plaintiffs' Expert Witness Disclosure. | | | | |
| L210 | A103 | 1.40 | 413.00 | ZS |
| Supplement and revise draft template for expert witnesses in advance of the Nov 23 expert witness disclosure. | | | | |
| L330 | A103 | 0.30 | 88.50 | ZS |
| Supplement and revise Notice of Deposition and Subpoenas to USAA's witnesses and IA CJ Hawkins. | | | | |
| L330 | A103 | 0.30 | 88.50 | ZS |
| Email to Melissa O'Connor advising of conflicts on noted deposition dates as well as proposing that we collaborate on scheduling prior to setting dates unilaterally. | | | | |
| L330 | A104 | 0.30 | 88.50 | ZS |
| Multiple emails with Counsel for Harjo Construction, Mike Deleo, regarding series of notices of depositions and record records from USAA. | | | | |
| L330 | A107 | 0.20 | 59.00 | ZS |
| Email to Melissa O'Connor advising of Plaintiffs intent to depose CJ Hawkins, Maureen Swartz, and Sophronia Moore-Samuels and requesting dates for the same. | | | | |
| L330 | A104 | 0.60 | 177.00 | ZS |
| Compile total list of all depositions requested by USAA, depositions taken Ruiz & Smart, and list and prioritize potential witnesses to depose to date in this matter. | | | | |
| L330 | A103 | 0.30 | 43.50 | JST |
| Supplement and finalize Objections to Subpoena of Eric Shulzt; correspondence to opposing counsel regarding same; | | | | |
| L120 | A104 | 0.10 | 14.50 | TG |
| Review, supplement, and finalize letter to USAA's counsel regarding objection to subpoena to produce documents of Ruiz & Smart | | | | |

| | | | | |
|---|---|---|---|---|
| L330 | A103 | 0.20 | 29.00 | TG |
| Draft Notice of Videotaped Deposition Notice and Subpoena to Testify for Gerald Hartmann | | | | |
| L330 | A103 | 0.20 | 29.00 | TG |
| Revise and supplement Notice of Videotaped Depositions of Maureen Hawksworth and Sophronia Moore-Samuels | | | | |
| L120 | A107 | 0.30 | 148.50 | TL |
| Telephone call from Will Smart regarding fee issues | | | | |
| L120 | A107 | 0.20 | 99.00 | TL |
| Telephone call with client regarding Will Smart's position on fee issues | | | | |
| L130 | A108 | 0.20 | 99.00 | TL |
| Telephone call with Wes Snowden | | | | |
| L160 | A106 | 1.60 | 792.00 | TL |
| Meet with clients to prepare for mediation | | | | |
| L210 | A104 | 0.40 | 198.00 | TL |
| Review and analyze USAA's Motion for Protective Order in order to outline response to same | | | | |
| L130 | A107 | 0.40 | 118.00 | ZS |
| Email to expert S. Strzelec with pertinent materials necessary for his first impressions on the matters at issue in this case, specifically the chronology and allegations of fraud made by USAA. | | | | |
| L160 | A107 | 1.80 | 531.00 | ZS |
| Mediation preparation meeting with clients to discuss expectations, potential outcomes, impressions, as well as discuss future discovery needs in the event that mediation does not lead to settlement. | | | | |
| L160 | A104 | 0.40 | 118.00 | ZS |
| Review and analyze prior order of Judge Zilly in IDS. Prop. & Cas. Ins. Co. v. Fellows for potential submission related to mediation set for Monday Nov. 9. | | | | |
| L210 | A104 | 0.20 | 59.00 | ZS |
| Review and analyze Attorney's Lien entered in this action by Ruiz & Smart. | | | | |

Nov-05-20

| | | | | |
|---|---|---|---|---|
| L310 | A103 | 0.90 | 265.50 | ZS |
| Continue to supplement and revise draft objections, responses, and answer to USAA's discovery requests to Plaintiff Cooper Engst. | | | | |
| L310 | A104 | 0.70 | 206.50 | ZS |
| Review and analyze documents produced by Ruiz & Smart for purpose of evaluating production necessary to accompany USAA's second requests for production. | | | | |
| L330 | A103 | 0.30 | 88.50 | ZS |
| Revise and finalize subpoena package for USAA's Bad Faith Expert Jerry Hartmann. | | | | |
| L330 | A107 | 0.20 | 59.00 | ZS |
| Email from opposing counsel Melissa O'Connor regarding depositions dates, conflicts and advising of availability. | | | | |
| L330 | A103 | 0.10 | 14.50 | TG |
| Finalize Notice of Videotaped Depositions of Maureen Hawksworth and Sophronia Moore-Samuels, as well as send courtesy copies of same to USAA's counsel | | | | |
| L330 | A103 | 0.20 | 29.00 | TG |
| Supplement and finalize Subpoena Duces Tecum and courtesy copies of a draft Notice of Videotaped Deposition and a Subpoena to Testify for Gerald Hartmann, as well as send the same to USAA's counsel | | | | |

|  | | | | | |
|---|---|---|---|---|---|
| | L110 | A101 | 0.60 | 267.00 | EN |
| Nov-06-20 | Review the Motion for Protective Order for development of Response; | | | | |
| | L210 | A104 | 0.40 | 118.00 | ZS |
| | Review and analyze USAA's Motion to Quash Plaintiff's Second Rule 30(b)(6) Deposition Notice and Motion for Protective Order. | | | | |
| | L210 | A104 | 0.60 | 177.00 | ZS |
| | Review and analyze 30(b)(6) dep notices served by Ruiz & Smart and Rule 30(b)(6) notice served by LLG to to compare for duplicative topics and redundancies. | | | | |
| | L310 | A104 | 1.60 | 472.00 | ZS |
| | Review and analyze files received from Ruiz & Smart for the purpose of determining what needs to be added to Plaintiff's production in compliance with USAA's second requests for production. | | | | |

| L310 | A103 | 1.10 | 324.50 | ZS |
| --- | --- | --- | --- | --- |
| Further supplement and revise draft Objections, responses, and answers to USAA's requests for Admission to Plaintiffs. | | | | |
| L330 | A104 | 1.10 | 324.50 | ZS |
| Review and analyze 30(b)(6) deposition of Natasha Edwards after review of USAA's Motion to verify and evaluate strength of USAA's arguments that various 30(b)(6) topics were already covered. | | | | |
| L330 | A104 | 2.20 | 649.00 | ZS |
| Review and analyze Washington Federal case law related to 30(b)(6) depositions, additional topics, reopening discovery, permitting further examination, and allowing extension of previous deposition. | | | | |
| L160 | A104 | 0.20 | 29.00 | TG |
| Review file information in order to prepare exhibits to supplement mediation letter | | | | |
| L160 | A104 | 0.10 | 14.50 | TG |
| Review, supplement, and finalize Plaintiffs' mediation letter and exhibits and send the same to mediator | | | | |
| Totals | | 197.80 | $70,828.50 | |

## BILL SUMMARY

| | |
| --- | --- |
| **Total Fee & Disbursements** | **$70,828.50** |
| **Balance Now Due** | **$70,828.50** |

TAX ID Number          27-5101491

Exhibit 13

 Gmail

**Cooper Engst <cooper.engst@gmail.com>**

---

## Cost Breakdown
1 message

**Cooper Engst** <cooper.engst@gmail.com>
To: Tom Lether <tlether@letherlaw.com> erlick@jdrllc.com
Cc: Anna Engst <anna.s.engst@gmail.com>

Mon, Nov 9, 2020 at 11:53 AM

Please see attached.

_____
**Cooper Engst**
+1 (206) 661-8468
cooper.engst@gmail.com

📄 **Cost Impacts for Mediation 11-9-2020 Summary.pdf**
86K

The below screenshot is the native Excel file of the spreadsheet sent to the mediator on 11/9/2020. The cell for legal fees to date shows "=70,828+60,000" representing the $70,828 of Lether's time including his time working as an expert prior to becoming our counsel, and it also includes the amount reference by Mr. Smart in his declaration of $60,000, which we did not believe we owed. Nowhere does it reference the $86,884.60 amount of the Ruiz & Smart lien, because we were not aware of it until months later, even though Lether had received it via email days prior to mediation.



Exhibit 14

 Gmail

**Cooper Engst <cooper.engst@gmail.com>**

___

## Fwd: Engst v. USAA
1 message

**Cooper Engst** <cooper.engst@gmail.com>                                        Mon, Nov 9, 2020 at 2:25 PM
To: Tom Lether <tlether@letherlaw.com>
Cc: Anna Engst <anna.s.engst@gmail.com>

Tom,

Below is an email from Will's firm that they sent just before we had the first of two conversations about them withdrawing.

Our read of this email was they were sending the felony RCW as an attempt to scare us into dropping the case so we would have to pay their fees. We obviously didn't want to drop the case because we thought USAA's allegations were ridiculous.

There's no provision in the rep agreement for the attorney to withdraw after litigation commences so our view is they breached their agreement with us. There certainly aren't any grounds for them to withdraw for cause.

We aren't aware of any costs they incurred that we might be responsible for. We didn't approve and costs, and as far as we know they never paid any experts.

They seem very concerned about the reputation of their firm so it seems very odd that they want to have the reputation of dropping a client in the middle of litigation and then coming after them for fees and costs.

As I told Will on the phone, Anna and I strongly disagree that we owe them anything for fees and costs based on the rep agreement and based on the way they terminated their relationship with us.

Feel free to forward this to Will if you think it's appropriate.

Cooper

___

**Cooper Engst**
+1 (206) 661-8468
cooper.engst@gmail.com


---------- Forwarded message ---------
From: **McKean J. Evans** <mevans@plaintifflit.com>
Date: Mon, Oct 12, 2020 at 4:12 PM
Subject: RE: Engst v. USAA
To: Cooper Engst <cooper.engst@gmail.com>, Paige Lewis <plewis@plaintifflit.com>
Cc: Anna Engst <anna@98point6.com>, Isaac Ruiz <iruiz@plaintifflit.com>, Shannon McKeon <smckeon@plaintifflit.com>, William C. Smart <wsmart@plaintifflit.com>


Cooper and Anna,


        Attached are some documents we'll need to discuss when we speak this afternoon.


Thanks,

McKean

Exhibit 15





Exhibit 16

this Agreement and Release is intended and does release and discharge any claim and/or cause of action by them with regard to any known, unknown, or future damage, loss, or injury.

## V.    AGREEMENT FREELY AND VOLUNTARILY ENTERED INTO

The Parties agree that this Agreement and Release is being freely and voluntarily signed by them after they have: (i) read this Agreement and Release; (ii) been appraised by their attorney of all relevant information and the consequences of signing this Agreement and Release; and (iii) made their own investigation of the facts relating to this Agreement and Release.

The Parties are relying solely on their own judgment, belief, and knowledge with regard to the subject of this Agreement and Release, and they acknowledge that they have not been influenced to any extent whatsoever in making this Agreement and Release by any representations, inducements, promises, or other statements by any other party to this Agreement and Release, or anyone else, which are not set forth herein.

## VI.    DISMISSAL OF ENTIRE ACTION

Within five (5) court days of Plaintiffs' counsel's receipt of the Payment above, Plaintiffs shall file for a Stipulated Motion for Dismissal with Prejudice of all of their claims in the Action against USAA CIC pursuant to Fed. R. Civ. Proc. 41.

## VII.    NO ADMISSION OF LIABILITY OR COVERAGE

It is understood and agreed by Plaintiffs that this Agreement and Release shall not be construed, constitute, nor be deemed to be an admission of liability on the part of USAA CIC for Plaintiffs' claims in the Action, or for any coverage or benefits under the Policy.

## VIII.    NON-ASSIGNMENT OF CLAIMS

Plaintiffs hereby represent and warrant that they have not previously assigned or transferred, or purported to assign or transfer, any claim, demand, action, cause, or other right herein released or discharged.

## IX.    LIENS

Plaintiffs hereby warrant, represent, and acknowledge that they have not notified USAA CIC of any liens or other repayment obligations that have attached or might attach to any settlement payments related to the released matters. In addition, Plaintiffs are not aware of any liens or other repayment obligations that have attached or might attach to any settlement payments related to the released matters.

Plaintiffs agree that they, and not USAA CIC, shall be responsible for any liens, other repayment obligations, or attorneys' fees claim that have arisen or may arise, if any, due to the incidents in the Action and any other of this Agreement and Release. Plaintiffs agree to indemnify and hold USAA CIC harmless from and against any such claims arising from, relating to, or in connection with this Action arising out of or in connection with such claims relating to this Action, arising out of or in connection with such liens for this Action. Plaintiffs shall have

SETTLEMENT AND RELEASE OF ALL CLAIMS
*Engst v. USAA CIC*
Page 6 of 6

otherwise embodying any Confidential Material, except that Plaintiffs shall be entitled to destroy, rather than return (a) any Confidential Material stored in or by data processing equipment and (b) work product memoranda or pleadings embodying Confidential Material, subject to applicable court rules.

## XVI.  COUNTERPARTS

This Agreement and Release may be executed in multiple counterparts, including fax and electronic copies, each of which may be deemed an original.  Further, executed fax and electronic copies of this Agreement and Release bearing fax and/or electronic copy signature(s) shall be deemed to constitute an original.

IN WITNESS WHEREOF, Robert Cooper Engst, Anna Susan Engst and USAA CIC do hereby execute this Settlement Agreement and Release of All Claims.

DATED:  November **24**, 2020

ROBERT COOPER ENGST, Plaintiff

DATED:  November **24**, 2020

ANNA SUSAN ENGST, Plaintiff

DATED:  November **25**, 2020

*on behalf of* Defendant
USAA Casualty Insurance Company

**APPROVED AS TO FORM:**

DATED:  November **24**, 2020

LETHER LAW GROUP

THOMAS LETHER
Attorney for Plaintiffs

DATED:  November **25**, 2020

DKM LAW GROUP, LLP

MELISSA O'CONNOR
Attorney for Defendant USAA CIC

Exhibit 17

 Gmail

**Cooper Engst <cooper.engst@gmail.com>**

---

### RE: External Sender--Re: Engst v. USAA
1 message

---

**Tom Lether <tlether@letherlaw.com>**                                    Thu, Dec 3, 2020 at 4:06 PM
To: Cooper Engst <cooper.engst@gmail.com>
Cc: Anna Engst <anna.s.engst@gmail.com>, Lindsay Hartt <lhartt@letherlaw.com>, Tami Grende <tgrende@letherlaw.com>

> Thanks. Sounds like we are good.   – Lindsay can you run a total bill including any costs and expenses that we paid for
> me to review - thanks

---

> **From:** Cooper Engst <cooper.engst@gmail.com>
> **Sent:** Thursday, December 3, 2020 3:54 PM
> **To:** Tom Lether <tlether@letherlaw.com>
> **Cc:** Anna Engst <anna.s.engst@gmail.com>; Lindsay Hartt <lhartt@letherlaw.com>; Tami Grende
> <tgrende@letherlaw.com>
> **Subject:** External Sender--Re: Engst v. USAA
>
>
> Thanks, Tom. That's consistent with my recollection of our conversation. We're in agreement with the terms outlined in
> your email below. I don't think we need to do a formal agreement.
>
> What are the approximate hourly fees to date? Before the mediation I think you said they were around $55k before
> adjustments for inefficiencies, etc.
>
> Below is what I'm tracking for costs. Are there any others costs to date?
>
> - Mediation: $2,100 (paid direct)
>
> - Steve: $7,500  (paid direct)
>
> - Harjo: $2,000  (paid direct)
>
> - Process server: $125  (paid direct)
>
> - Drew? I think you said around $5k
>
> - Referee: 50% of TBD
>
>
> Thanks,
>
> Cooper
>
>
>
> On Thu, Dec 3, 2020 at 2:31 PM Tom Lether <tlether@letherlaw.com> wrote:

As a follow up to our conversation during the mediation, I have revised our fee agreement. Specifically, I believe we initially agreed to bill this matter on an hourly basis for the first $5,000 with the hope that we could get this matter resolved quickly. As you know, unfortunately USAA made it very difficult on all of us for the first several months. As a result, and to help you guys out, I am willing to convert my original fee agreement to a "lesser than" agreement wherein you would pay the lesser of my hourly rate or a 33% contingency fee on the total amount recovered in the appraisal process. I would not charge any contingency fee for the amounts paid on the personal property or ALE claims. Moreover, I will not charge any recovery on the first $106,000 since that was the amount that USAA had originally offered to you on the structural loss before they raised the fraud issue. The 33% contingency would only be applied on any appraisal award in excess of the $106,000. Obviously, I would also need reimbursement for any costs.

Let me know if this sounds agreeable. If so, I can send you a formal agreement or we can just agree to this through the exchange of emails.

If there are any concerns, give me a call to discuss. Thank you for your assistance.

Tom Lether

Lether Law Group

1848 Westlake Ave. N., Suite 100 | Seattle, WA 98109

☎  206.467.5444 x 101 |☎   855.467.5444| F 206.467.5544  |✉ tlether@letherlaw.com

LetherLaw.com

CONFIDENTIALITY NOTICE: The information contained in this ELECTRONIC MAIL transmission is confidential.  It may also be subject to the attorney-client privilege or be privileged work product or proprietary information.  This information is intended for the exclusive use of the addressee(s).  If you are not the intended recipient, you are hereby notified that any use, disclosure, dissemination, distribution [other than to the addressee(s)], copying or taking of any action because of this information is strictly prohibited.

To the extent that this communication or email is directed towards any client of Lether Law Group, this communication provides legal advice from our office and is intended solely as an attorney-client communication.  Our office represents you as your attorney.  Nothing in this communication is related to investigatory or adjusting activities.  Any references to investigative or adjusting activities contained in this correspondence are included solely within the context of our legal advice.  This communication is not intended to be shared with third parties.

--

_____

**Cooper Engst**

+1 (206) 661-8468

cooper.engst@gmail.com

Exhibit 18

 Gmail

**Cooper Engst <cooper.engst@gmail.com>**

---

## RE: External Sender--Engst v. USAA CIC - Attorney Lien from Ruiz & Smart
1 message

**Tom Lether** <tlether@letherlaw.com>                                           Thu, Mar 11, 2021 at 1:50 PM
To: Cooper Engst <cooper.engst@gmail.com>
Cc: Tami Grende <tgrende@letherlaw.com>


Tami can you send over the letter we got from Will and the lein notice – Cooper let me know if we need to discuss

**From:** Cooper Engst <cooper.engst@gmail.com>
**Sent:** Thursday, March 11, 2021 1:48 PM
**To:** Tom Lether <tlether@letherlaw.com>
**Subject:** Re: External Sender--Engst v. USAA CIC - Attorney Lien from Ruiz & Smart

Can you forward the attachment? Hopefully this was an administrative oversight by Will's office.

I know Will likes to pick a fight but this is not one he should be pursuing. He has a lot more to lose than we do. This is personal for us, and if he thinks he has leverage with his lien he's mistaken.

On Thu, Mar 11, 2021 at 1:29 PM Tom Lether <tlether@letherlaw.com> wrote:

> Understood- I suggest you forward the check to me per the settlement agreement and we can address with Mr Smart – thanks
>
> **From:** Melissa O'Connor <MOC@dkmlawgroup.com>
> **Sent:** Thursday, March 11, 2021 12:50 PM
> **To:** Tom Lether <tlether@letherlaw.com>; Eric Neal <eneal@letherlaw.com>; William C. Smart <wsmart@plaintifflit.com>
> **Cc:** Joshua N. Kastan <JNK@dkmlawgroup.com>
> **Subject:** External Sender--Engst v. USAA CIC - Attorney Lien from Ruiz & Smart
>
> Good afternoon Tom, Eric & Will,
>
> We received the attached correspondence and lien from our client regarding an attorney lien from Ruiz and Smart which was directed to adjuster David Glover.
>
> Tom/Eric – as you know, the terms of our Settlement and Release Agreement provide that Plaintiffs are to be solely responsible for any and all liens, not USAA CIC. Please advise as to how this should be handled in light of the forthcoming appraisal check.

Best Regards,

Melissa O'Connor

**Melissa O'Connor**



California | Washington | Oregon

www.dkmlawgroup.com

**San Francisco Office**

535 Pacific Avenue, Suite 101

San Francisco, CA 94133

Direct: (415) 813-7661

**Seattle Office**

1700 7th Avenue, Ste. 2100

Seattle, WA 98101

**Portland Office**

1050 SW 6th Avenue, Suite 1100

Portland, OR 97204

**NOTICE**

This e-mail message constitutes an electronic communication as defined by the Electronic Communications Privacy Act, 18 U.S.C. 2510.  It is confidential and intended only for authorized recipients and may contain information that is privileged, attorney work product or exempt from disclosure under applicable law. If you are not a named recipient or have otherwise received this message in error, you are hereby notified that any dissemination, distribution or copying of this e-mail is strictly prohibited. If you have received this message in error, please immediately notify the sender by return e-mail and delete this e-mail message, all copies and attachments from your computer.

--

**Cooper Engst**

+1 (206) 661-8468

cooper.engst@gmail.com

 Gmail

**Cooper Engst <cooper.engst@gmail.com>**

## RE: External Sender--Engst v. USAA CIC - Attorney Lien from Ruiz & Smart
1 message

**Tami Grende** <tgrende@letherlaw.com>                                        Thu, Mar 11, 2021 at 2:44 PM
To: Tom Lether <tlether@letherlaw.com>, Cooper Engst <cooper.engst@gmail.com>

Please see attached.

Thank you,


Tami Grende | Paralegal

Lether Law Group

1848 Westlake Ave. N., Suite 100 | Seattle, WA 98109

☎  206.467.5444 x 126 | Fax: 206.467.5544 | Cell: 206.376.4216  |✉  tgrende@letherlaw.com

LetherLaw.com


CONFIDENTIALITY NOTICE: The information contained in this ELECTRONIC MAIL transmission is confidential.  It may also
be subject to the attorney-client privilege or be privileged work product or proprietary information.  This information is intended
for the exclusive use of the addressee(s).  If you are not the intended recipient, you are hereby notified that any use, disclosure,
dissemination, distribution [other than to the addressee(s)], copying or taking of any action because of this information is strictly
prohibited.


To the extent that this communication or email is directed towards any client of Lether Law Group, this communication provides
legal advice from our office and is intended solely as an attorney-client communication.  Our office represents you as your
attorney.  Nothing in this communication is related to investigatory or adjusting activities.  Any references to investigative or
adjusting activities contained in this correspondence are included solely within the context of our legal advice.  This
communication is not intended to be shared with third parties.


**From:** Tom Lether <tlether@letherlaw.com>
**Sent:** Thursday, March 11, 2021 1:50 PM
**To:** Cooper Engst <cooper.engst@gmail.com>
**Cc:** Tami Grende <tgrende@letherlaw.com>
**Subject:** RE: External Sender--Engst v. USAA CIC - Attorney Lien from Ruiz & Smart


Tami can you send over the letter we got from Will and the lein notice – Cooper let me know if we need to discuss


**From:** Cooper Engst <cooper.engst@gmail.com>
**Sent:** Thursday, March 11, 2021 1:48 PM



March 11, 2021

**VIA EMAIL**

Thomas Lether
Lether Law Group, PLLC
1848 Westlake Ave. N., Suite 100
Seattle, WA 98109
tlether@letherlaw.com

   Re: *Engst v. USAA*
     Attorney Lien

Dear Mr. Lether:

   I am told by Mr. Howson and Mr. Lucurell that the appraisal has now been completed in the above-referenced matter.

   I am writing to remind you of the outstanding issues between our firm and the Engsts. We served your office with an Attorney's Lien last November, copy of which is enclosed hereto.

   Would you kindly let us know what arrangements are being made for the payment to our firm?  Please advise.  Thank you for your courtesy.

       Yours truly,

       William C. Smart
       wsmart@ruizandsmart.com

Enclosure

# Paige Lewis

| | |
|---|---|
| **From:** | Shannon McKeon |
| **Sent:** | Thursday, November 5, 2020 12:59 PM |
| **To:** | 'tlether@letherlaw.com' |
| **Cc:** | William C. Smart; Isaac Ruiz; Paige Lewis; McKean J. Evans; Eric Neal; Zachary Smith |
| **Subject:** | RE: Engst v. USAA - Attorney Lien |
| **Attachments:** | 2020 11 05 - R&S Attorney's Lien.pdf |

Dear Tom,

Please see the enclosed Attorney's Lien regarding the above-captioned matter.
Thank you,

~Shannon

**From:** Shannon McKeon
**Sent:** Friday, October 23, 2020 1:18 PM
**To:** 'tlether@letherlaw.com' <tlether@letherlaw.com>
**Cc:** William Smart <wsmart@plaintifflit.com>; Isaac Ruiz (iruiz@plaintifflit.com) <iruiz@plaintifflit.com>; Paige Lewis <plewis@plaintifflit.com>; McKean J. Evans <mevans@plaintifflit.com>
**Subject:** Engst v. USAA - Smart Declaration

Dear Tom,

Please see the attached Declaration.
Thank you,

~Shannon

**Shannon K. McKeon** (she/her/hers)
Legal Assistant
smckeon@plaintifflit.com
T: 206-578-3162 | F: 206-785-1702

95 S Jackson Street, Suite 100
Seattle, WA 98104
www.plaintifflit.com


RUIZ & SMART
PLAINTIFF LITIGATION

The Honorable Thomas S. Zilly

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

ROBERT COOPER ENGST and ANNA
SUSAN ENGST, husband and wife, and the
marital community comprised thereof,

                    Plaintiffs,

    v.

USAA CASUALTY INSURANCE
COMPANY, a foreign insurance company,

                    Defendant.

Case No. 19-cv-02074-TSZ

ATTORNEY'S LIEN

RCW 60.40.010

RUIZ & SMART PLAINTIFF LITIGATION, PLLC, WILLIAM C. SMART, and

ISAAC RUIZ ("Attorneys"), hereby claim a lien against the property of the former clients

ROBERT COOPER ENGST and ANNA SUSAN ENGST ("Clients"), as follows:

    a)  Upon the papers of the Clients, which have come into Attorneys' possession in

        the course of Attorneys' professional employment;

    b)  Upon money in Attorneys' hands belonging to the client;

    c)  Upon money in the hands of the adverse party in an action or proceeding, in

        which Attorneys were employed, from the time of giving notice of the lien to that

        party;

ATTORNEY'S LIEN;
(No. 19-CV-02074-TSZ) - 1

RUIZ & SMART
PLAINTIFF LITIGATION PLLC
95 South Jackson Street, Suite 100
Seattle, Washington 98104
Tel. 206-203-9100 Fax 206-785-1702

d) Upon an action, including one pursued by arbitration or mediation, and its proceeds after the commencement thereof to the extent of the value of any services performed by Attorneys in the action, or if the services were rendered under a special agreement, for the sum due under such agreement; and

e) Upon a judgment to the extent of the value of any services performed by Attorney sin the action, or if the services were rendered under a special agreement, for the sum due under such agreement, from the time of filing notice of such lien or claim with the clerk of the court in which such judgment is entered, which notice must be filed with the papers in the action in which such judgment was rendered, and an entry made in the execution docket, showing name of claimant, amount claimed and date of filing notice.

f) The amount of the claimed lien is the sum of $82,896, for services rendered in connection with the above-referenced action, and $3,988.60 for costs advanced.

DATED November 5, 2020, at Seattle, Washington.

_____
WILLIAM C. SMART, WSBA #8192

SUBSCRIBED AND SWORN TO before me this 5th day of November, 2020.
Print Name   Shannon K. McKeon
NOTARY PUBLIC in and for the State of Washington;
residing at: ~~What St.~~  KING County
My commission expires:   3-30-2021

RUIZ & SMART
PLAINTIFF LITIGATION PLLC
95 South Jackson Street, Suite 100
Seattle, Washington 98104
Tel. 206-203-9100 Fax 206-785-1702

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

RUIZ & SMART
PLAINTIFF LITIGATION, PLLC


By: *s/ William C. Smart*
   William C. Smart, WSBA #8192
   Isaac Ruiz, WSBA #35237
   McKean J. Evans, WSBA #52750
   95 S. Jackson St., Suite 100
   Seattle, WA 98104
   Tel: 206-203-9100 | Fax: 206-643-1880
   wsmart@plaintifflit.com
   iruiz@plaintifflit.com
   mevans@plaintifflit.com

ATTORNEY'S LIEN;
(No. 19-CV-02074-TSZ) - 3

RUIZ & SMART
PLAINTIFF LITIGATION PLLC
95 South Jackson Street, Suite 100
Seattle, Washington 98104
Tel. 206-203-9100 Fax 206-785-1702

**CERTIFICATE OF SERVICE**

I declare under penalty of perjury under the laws of the State of Washington and the United States of America that at all times hereinafter mentioned, I have been a resident of the State of Washington, over the age of eighteen (18) years, not a party to the above-entitled action, and competent to be a witness herein. On the date stated below, I caused a copy of the foregoing document to be served on the individuals identified below via U.S. Certified Mail, Return Receipt, and electronic mail:

Thomas Lether, WSBA #18089
Eric J. Neal, WSBA #31863
1848 Westlake Avenue N, Suite 100
Seattle, WA 98109
tlether@letherlaw.com
eneal@letherlaw.com

*Attorneys for Robert Cooper Engst and Anna Susan Engst*

Signed November 5, 2020, at Seattle, Washington.

Shannon McKeon, Legal Assistant
Plaintiff Litigation Group PLLC
95 S. Jackson St., Suite 100
Seattle, WA 98104
(206) 203-9100

ATTORNEY'S LIEN;
(No. 19-CV-02074-TSZ) - 4

Exhibit 19

 Gmail

**Cooper Engst <cooper.engst@gmail.com>**

---

### Re: External Sender--Re: Engst v. USAA
1 message

---

**Tom Lether** <tlether@letherlaw.com>                     Fri, Mar 12, 2021 at 7:54 PM
To: Cooper Engst <cooper.engst@gmail.com>
Cc: Tami Grende <tgrende@letherlaw.com>, Anna Engst <anna.s.engst@gmail.com>

Ok. Sounds good. However we will need to respond to USAA at some point so they now how to issue the check. I recommend u work out the lien issue with Smart. I can't get involved in that due to conflict issues. Just let me know what u want me to tell him and USAA. Thanks.

Thomas Lether
Lether Law Group
Westlake Office: 1848 Westlake Ave. N., Suite 100 | Seattle, WA 98109
Queen Anne Office: 1238/1240 Bigelow Ave. N. | Seattle, WA 98109
( 206.467.5444 |( 855.467.5444 |Cell 206.498.0693 | F 206.467.5544 |tlether@letherlaw.com
LetherLaw.com

CONFIDENTIALITY NOTICE: The information contained in this ELECTRONIC MAIL transmission is confidential. It may also be subject to the attorney-client privilege or be privileged work product or proprietary information. This information is intended for the exclusive use of the addressee(s). If you are not the intended recipient, you are hereby notified that any use, disclosure, dissemination, distribution [other than to the addressee(s)], copying or taking of any action because of this information is strictly prohibited.

To the extent that this communication or email is directed towards any client of Lether Law Group, this communication provides legal advice from our office and is intended solely as an attorney-client communication. Our office represents you as your attorney. Nothing in this communication is related to investigatory or adjusting activities. Any references to investigative or adjusting activities contained in this correspondence are included solely within the context of our legal advice. This communication is not intended to be shared with third parties.

> On Mar 12, 2021, at 4:52 PM, Cooper Engst <cooper.engst@gmail.com> wrote:
>
>
> Please don't send anything for now. Thanks.
>
>
>
> On Fri, Mar 12, 2021 at 4:31 PM Tami Grende <tgrende@letherlaw.com> wrote:
>
>> Good afternoon,
>>
>> Attached please find a redrafted proposed letter to USAA's counsel for your review and approval.
>>
>> Please let us know if you have any questions or changes.
>>
>> Thank you,
>>
>>
>> Tami Grende | Paralegal
>>
>> Lether Law Group

1848 Westlake Ave. N., Suite 100 | Seattle, WA 98109

☎ 206.467.5444 x 126 | Fax: 206.467.5444 | Cell: 206.376.4216 |✉ tgrende@letherlaw.com

LetherLaw.com

CONFIDENTIALITY NOTICE: The information contained in this ELECTRONIC MAIL transmission is confidential. It may also be subject to the attorney-client privilege or be privileged work product or proprietary information. This information is intended for the exclusive use of the addressee(s). If you are not the intended recipient, you are hereby notified that any use, disclosure, dissemination, distribution [other than to the addressee(s)], copying or taking of any action because of this information is strictly prohibited.

To the extent that this communication or email is directed towards any client of Lether Law Group, this communication provides legal advice from our office and is intended solely as an attorney-client communication. Our office represents you as your attorney. Nothing in this communication is related to investigatory or adjusting activities. Any references to investigative or adjusting activities contained in this correspondence are included solely within the context of our legal advice. This communication is not intended to be shared with third parties.

**From:** Tom Lether <tlether@letherlaw.com>
**Sent:** Friday, March 12, 2021 1:18 PM
**To:** Cooper Engst <cooper.engst@gmail.com>; Tami Grende <tgrende@letherlaw.com>
**Cc:** Anna Engst <anna.s.engst@gmail.com>
**Subject:** RE: External Sender--Re: Engst v. USAA


Not planning on it- in fact need to change it up to address the ethics issue- I will send you the rule but it sounds like I have to hold in trust the disputed amount of the bill

**From:** Cooper Engst <cooper.engst@gmail.com>
**Sent:** Friday, March 12, 2021 12:50 PM
**To:** Tami Grende <tgrende@letherlaw.com>
**Cc:** Anna Engst <anna.s.engst@gmail.com>; Tom Lether <tlether@letherlaw.com>
**Subject:** External Sender--Re: Engst v. USAA


I'll review. Please don't send.


On Fri, Mar 12, 2021 at 12:47 PM Tami Grende <tgrende@letherlaw.com> wrote:

Good afternoon,


Attached please find a proposed letter to USAA's counsel for your review and approval. The referenced enclosure is also attached.

Please let us know if you have any questions or changes.


Thank you,

Exhibit 20

 Gmail

**Cooper Engst <cooper.engst@gmail.com>**

___

## Re: External Sender--Re: Engst v. USAA
1 message

**Tom Lether** <tlether@letherlaw.com>                                                    Sat, Mar 13, 2021 at 4:18 PM
To: Cooper Engst <cooper.engst@gmail.com>
Cc: Tami Grende <tgrende@letherlaw.com>, Anna Engst <anna.s.engst@gmail.com>

I cannot be your attorney on a fee dispute with your prior counsel. If you would like to discuss please set a call next week.
I have given you my advice on the check issue so let me know what you want to do. Thanks.

Thomas Lether
Lether Law Group
Westlake Office: 1848 Westlake Ave. N., Suite 100 | Seattle, WA 98109
Queen Anne Office: 1238/1240 Bigelow Ave. N. | Seattle, WA 98109
( 206.467.5444 |( 855.467.5444 |Cell 206.498.0693 | F 206.467.5544 |tlether@letherlaw.com
LetherLaw.com


CONFIDENTIALITY NOTICE: The information contained in this ELECTRONIC MAIL transmission is confidential.  It may
also be subject to the attorney-client privilege or be privileged work product or proprietary information.  This information is
intended for the exclusive use of the addressee(s).  If you are not the intended recipient, you are hereby notified that any
use, disclosure, dissemination, distribution [other than to the addressee(s)], copying or taking of any action because of
this information is strictly prohibited.

To the extent that this communication or email is directed towards any client of Lether Law Group, this communication
provides legal advice from our office and is intended solely as an attorney-client communication.  Our office represents
you as your attorney.  Nothing in this communication is related to investigatory or adjusting activities.  Any references to
investigative or adjusting activities contained in this correspondence are included solely within the context of our legal
advice.  This communication is not intended to be shared with third parties.


>           On Mar 13, 2021, at 3:37 PM, Cooper Engst <cooper.engst@gmail.com> wrote:
>
>
>           I thought you were my counsel which is why Will said he'd communicate with you. Did you have any idea
>           that he might file a lien?
>
>
>
>           On Mar 13, 2021, at 10:17 AM, Tom Lether <tlether@letherlaw.com> wrote:
>
>
>            You are ok to talk to him at this point unless u think you want to hire counsel to deal with it.  In
>           regard to the check issue I recommend the two check approach. If it is one check then I have
>           to hold the same with your permission until your resolved the issue with Will. I can't release
>           same and it puts me into an ethics spot with you. With two checks at least you can start
>           negotiating with your bank.  Also it gets the money  out of USAA and to us at least.
>
>           Thomas Lether
>           Lether Law Group
>           Westlake Office: 1848 Westlake Ave. N., Suite 100 | Seattle, WA 98109
>           Queen Anne Office: 1238/1240 Bigelow Ave. N. | Seattle, WA 98109
>           ( 206.467.5444 |( 855.467.5444 |Cell 206.498.0693 | F 206.467.5544 |tlether@letherlaw.com
>           LetherLaw.com
>
>
>           CONFIDENTIALITY NOTICE: The information contained in this ELECTRONIC MAIL
>           transmission is confidential.  It may also be subject to the attorney-client privilege or be

privileged work product or proprietary information.  This information is intended for the exclusive use of the addressee(s).  If you are not the intended recipient, you are hereby notified that any use, disclosure, dissemination, distribution [other than to the addressee(s)], copying or taking of any action because of this information is strictly prohibited.

To the extent that this communication or email is directed towards any client of Lether Law Group, this communication provides legal advice from our office and is intended solely as an attorney-client communication.  Our office represents you as your attorney.  Nothing in this communication is related to investigatory or adjusting activities.  Any references to investigative or adjusting activities contained in this correspondence are included solely within the context of our legal advice.  This communication is not intended to be shared with third parties.

On Mar 12, 2021, at 11:52 PM, Cooper Engst <cooper.engst@gmail.com> wrote:

When I spoke to Will in November he told me he couldn't talk to me and could only communicate with you.

Anna and I have to think more about the two check idea. It seems issuing the check as originally planned in the settlement agreement might be better but I'm not sure. What do you think is better?

On Mar 12, 2021, at 7:54 PM, Tom Lether <tlether@letherlaw.com> wrote:

 Ok. Sounds good. However we will need to respond to USAA at some point so they now how to issue the check. I recommend u work out the lien issue with Smart.  I can't get involved in that due to conflict  issues. Just let me know what u want me to tell him and USAA. Thanks.

Thomas Lether
Lether Law Group
Westlake Office: 1848 Westlake Ave. N., Suite 100 | Seattle, WA 98109
Queen Anne Office: 1238/1240 Bigelow Ave. N. | Seattle, WA 98109
( 206.467.5444 |( 855.467.5444 |Cell 206.498.0693 |
F 206.467.5544 |tlether@letherlaw.com
LetherLaw.com

CONFIDENTIALITY NOTICE: The information contained in this ELECTRONIC MAIL transmission is confidential.  It may also be subject to the attorney-client privilege or be privileged work product or proprietary information.  This information is intended for the exclusive use of the addressee(s).  If you are not the intended recipient, you are hereby notified that any use, disclosure, dissemination, distribution [other than to the addressee(s)], copying or taking of any action because of this information is strictly prohibited.

To the extent that this communication or email is directed towards any client of Lether Law Group, this communication provides legal advice from our office and is intended solely as an attorney-client communication.  Our office represents you as your attorney. Nothing in this communication is related to investigatory or

Exhibit 21

 Gmail

**Cooper Engst <cooper.engst@gmail.com>**

---

### Re: External Sender--Engst v. USAA
1 message

---

**Cooper Engst** <cooper.engst@gmail.com>                    Fri, Mar 19, 2021 at 2:38 PM
To: Tom Lether <tlether@letherlaw.com>
Cc: Anna Engst <anna.s.engst@gmail.com>, Tami Grende <tgrende@letherlaw.com>

> Tom, were you going to send us an email to review? As I mentioned on the phone, we can't relieve you of any potential
> past conflict or past involvement as a witness since that could be detrimental to us, but let us know if there's a way we can
> relieve you of a potential conflict for a future conversation with Isaac.

On Thu, Mar 18, 2021 at 4:59 PM Tom Lether <tlether@letherlaw.com> wrote:

Cooper,


Thanks. I will need to have a phone conversation with you before I take any further action.

Please let me know if you are available for a call tomorrow. If so, Tami can schedule the same. Thank you.



Tom Lether

Lether Law Group

1848 Westlake Ave. N., Suite 100 | Seattle, WA 98109

☎  206.467.5444 x 101 |Cell:  206.498.0693| Fax:  206.467.5544 |✉ tlether@letherlaw.com

LetherLaw.com


CONFIDENTIALITY NOTICE: The information contained in this ELECTRONIC MAIL transmission is confidential.  It may also be subject to the attorney-client privilege or be privileged work product or proprietary information.  This information is intended for the exclusive use of the addressee(s).  If you are not the intended recipient, you are hereby notified that any use, disclosure, dissemination, distribution [other than to the addressee(s)], copying or taking of any action because of this information is strictly prohibited.


To the extent that this communication or email is directed towards any client of Lether Law Group, this communication provides legal advice from our office and is intended solely as an attorney-client communication.  Our office represents you as your attorney.  Nothing in this communication is related to investigatory or adjusting activities.  Any references to investigative or adjusting activities contained in this correspondence are included solely within the context of our legal advice.  This communication is not intended to be shared with third parties.

---

**From:** Cooper Engst <cooper.engst@gmail.com>
**Sent:** Thursday, March 18, 2021 2:18 PM
**To:** Isaac Ruiz <iruiz@plaintifflit.com>; Tom Lether <tlether@letherlaw.com>; Anna Engst <anna.s.engst@gmail.com>;
McKean J. Evans <mevans@plaintifflit.com>; kknudsen@ruizandsmart.com; Shannon McKeon

<smckeon@plaintifflit.com>; Paige Lewis <plewis@plaintifflit.com>; Tami Grende <tgrende@letherlaw.com>
**Subject:** External Sender--Engst v. USAA

Isaac and Tom,

To the extent you need our permission to speak to each other, we're writing to give you that permission. We hope you'll have a conversation and that this issue can be resolved quickly.

Tom, you're welcome to share with Isaac our position and thoughts related to the validity of the lien from Ruiz & Smart. You're also welcome to tell Isaac of the existence of the settlement agreement and the specific timing and form of payment required by the settlement agreement.

We're not pleased that this lien and PLG's outreach to third parties and to USAA have delayed the payment of our settlement, and we don't appreciate the threat of litigation from our former counsel.

Sincerely,

Cooper and Anna

_____

**Cooper Engst**

+1 (206) 661-8468

cooper.engst@gmail.com

--

_____
**Cooper Engst**
+1 (206) 661-8468
cooper.engst@gmail.com

Exhibit 22

Subject: External Sender--Engst

 **William C. Smart** <wsmart@plaintifflit.com>                    Fri, Mar 12, 2021, 11
to Tom Lether, Isaac Ruiz, Shannon McKeon, Paige Lewis

**You are viewing an attached message.** Gmail can't verify the authenticity of attached messages.

Dear Mr. Lether,
Pursuant to our conversation, we agree that USAA can send the money to your trust account, if, but only if, you ag
withhold the full amount of our lien until the matter is resolved by litigation or other resolution.
Please confirm that understanding.
Thank you for your professional courtesy.
Will Smart

Sent from my iPhone

Exhibit 23

 Gmail

**Cooper Engst <cooper.engst@gmail.com>**

---

## Call Today
1 message

---

**McKean J. Evans** <mevans@plaintifflit.com>           Tue, Oct 13, 2020 at 4:37 PM
To: Anna Engst <anna.s.engst@gmail.com>, Cooper Engst <cooper.engst@gmail.com>
Cc: "William C. Smart" <wsmart@plaintifflit.com>, Isaac Ruiz <iruiz@plaintifflit.com>

Dear Cooper and Anna,

       Following up on our call today, I am reiterating some of the important information and deadlines we discussed. Our firm will withdraw from representing you in this matter for the reasons we have explained. I understand that you intend to speak with attorney Tom Lether to discuss potentially having him represent you in this matter.

       There are important deadlines in the case that you and your new lawyer should be mindful of. Most importantly is the inspection scheduled for this Friday, October 16, 2020, at 12 p.m. Additionally, any opposition to USAA's motion to amend its answer must be filed by October 26, 2020. The next upcoming deadline falls on November 23, 2020, which is the deadline to file amended pleadings or disclose expert reports. Additional deadlines are listed in the Court's case schedule, which is attached. Please make sure that any lawyer you consider retaining to represent you in this matter is aware of these deadlines.

       Because of the inspection scheduled for Friday, and because we must file a notice of withdrawal with the Court, please let us know as soon as possible about whether you intend to retain Mr. Lether or another attorney.

Sincerely,

McKean

**McKean J. Evans** (he/him/his)

**Attorney**

mevans@plaintifflit.com

T: 206-800-2689 | F: 206-785-1702

95 S Jackson Street, Suite 100

Seattle, WA 98104

www.plaintifflit.com



This message and any attached documents contain information which may be confidential, subject to privilege or exempt from disclosure under applicable law. If you are not an intended recipient, please notify the sender and delete the message and any copies from your system.

---

**Dkt. No. 11 - Minute Order Setting Trial Date and Related Dates.pdf**
22K

Exhibit 24

 Gmail

**Cooper Engst <cooper.engst@gmail.com>**

## Engst v. USAA
1 message

**Paige Lewis** <plewis@plaintifflit.com>
To: Cooper Engst <cooper.engst@gmail.com>
Cc: Isaac Ruiz <iruiz@plaintifflit.com>, Shannon McKeon <smckeon@plaintifflit.com>

Mon, Jun 7, 2021 at 4:49 PM

Hi Cooper and Anna,

I hope you both and the baby are doing well!  Isaac asked me to send you the attached attorney fee and cost reports.  Thanks!


~Paige

Note: This email on 6/7/21 was the first time Ruiz & Smart sent any breakdown of fees and costs aside from their lien.

**Paige C. Lewis** (she/her/hers)

**Firm Administrator**

**Paralegal**

plewis@ruizandsmart.com

T: 206-800-2182 | F: 206-785-1702


1200 Fifth Avenue, Suite 1220

Seattle, WA 98101

www.ruizandsmart.com




This message and any attached documents contain information which may be confidential, subject to privilege or exempt from disclosure under applicable law. If you are not an intended recipient, please notify the sender and delete the message and any copies from your system.

**2 attachments**

 **Engst Attorney Fees.pdf**
81K

Engst Matter

| Date | Staff | Time | Rate | Value | Notes |
|---|---|---|---|---|---|
| 11/19/19 | Ruiz | 0.30 | $ 600 | $ 180.00 | Correspondence relating to Engst matter |
| 11/26/19 | Ruiz | 0.20 | $ 600 | $ 120.00 | Review draft email; correspondence with clients |
| 12/02/19 | Ruiz | 0.50 | $ 600 | $ 300.00 | Conference with clients regarding scope of repairs and other subjects |
| 12/03/19 | Ruiz | 5.50 | $ 600 | $ 3,300.00 | Review documents and prepare timeline |
| 12/04/19 | Ruiz | 1.50 | $ 600 | $ 900.00 | Visit home; conference with clients; correspondence regarding contractors |
| 12/05/19 | Ruiz | 0.80 | $ 600 | $ 480.00 | Review and revise draft complaint |
| 12/06/19 | Ruiz | 0.20 | $ 600 | $ 120.00 | Correspondence relating to contractor |
| 12/19/19 | Ruiz | 2.00 | $ 600 | $ 1,200.00 | Final review of pleadings |
| 01/15/20 | Ruiz | 0.70 | $ 600 | $ 420.00 | Prep for clien tmeeting |
| 02/29/20 | Ruiz | 0.20 | $ 600 | $ 120.00 | Revise discovery |
| 04/20/20 | Ruiz | 0.40 | $ 600 | $ 240.00 | Review Harjo estimate |
| 05/14/20 | Evans | 0.80 | $ 475 | $ 380.00 | Draft protective order / Email to defenants re outstanding discovery |
| 05/18/20 | McKeon | 0.20 | $ 350 | $ 70.00 | Conference with M. Evans, Circulate stipulated protective order to counsel |
| 05/28/20 | McKeon | 0.33 | $ 350 | $ 115.50 | Review subpoenas and email clients re same |
| 05/28/20 | Smart | 0.30 | $ 750 | $ 225.00 | Review document subpoenas issued by USAA |
| 05/29/20 | McKeon | 0.33 | $ 350 | $ 115.50 | Emails with client re subpoenas; Schedule call re same |
| 06/03/20 | Evans | 1.00 | $ 475 | $ 475.00 | Review outstanding discovery and doc production |
| 06/08/20 | Evans | 0.30 | $ 475 | $ 142.50 | Review subpoenas |
| 06/08/20 | Evans | 0.60 | $ 475 | $ 285.00 | TC with clients re discovery |
| 06/08/20 | Evans | 0.80 | $ 475 | $ 380.00 | Draft objections to subpoenas |
| 06/08/20 | McKeon | 1.00 | $ 350 | $ 350.00 | Phone conference with clients re subpoenas and case status; Review file for checks received from USAA and disposition thereof |
| 06/08/20 | Smart | 0.50 | $ 750 | $ 375.00 | Conference call with the clients and M. Evans |
| 06/11/20 | Ruiz | 0.70 | $ 600 | $ 420.00 | Review correspondence |
| 06/15/20 | Evans | 0.20 | $ 475 | $ 95.00 | Work on document production |
| 06/16/20 | Smart | 0.50 | $ 750 | $ 375.00 | Emails with M. Evans and S. McKeon re 30(b)(6) and discovery |
| 06/17/20 | Evans | 0.30 | $ 475 | $ 142.50 | Review bids and confirm with client |
| 06/17/20 | Evans | 0.50 | $ 475 | $ 237.50 | Finalize document production |
| 06/17/20 | McKeon | 0.30 | $ 350 | $ 105.00 | Bates Number additional discovery documents; Send link of supplemental discovery requests to clients |
| 06/19/20 | McKeon | 0.50 | $ 350 | $ 175.00 | Finalize and serve plaintiffs' supplemental production |
| 06/29/20 | Evans | 0.30 | $ 475 | $ 142.50 | Emails with client and OC re subpoenas |
| 07/01/20 | Evans | 1.50 | $ 475 | $ 712.50 | Draft motion to compel discovery |
| 07/01/20 | Evans | 3.00 | $ 475 | $ 1,425.00 | Review document production and discovery responses |
| 07/02/20 | Evans | 0.90 | $ 475 | $ 427.50 | Work on motion to compel |
| 07/03/20 | Evans | 1.50 | $ 475 | $ 712.50 | Draft motion to compel discovery |
| 07/03/20 | Evans | 0.70 | $ 475 | $ 332.50 | Legal research re discovering claims handling procedures |
| 07/07/20 | Ruiz | 0.40 | $ 600 | $ 240.00 | Review McKean's SJ motion |
| 07/07/20 | Evans | 1.00 | $ 475 | $ 475.00 | Finalize motion to compel / draft declaration and prepare exhibits |

| 07/07/20 | Evans | 0.50 | $ 475 | $ | 237.50 | Email to D counsel re discovery dispute and outstanding discovery |
|---|---|---|---|---|---|---|
| 07/07/20 | Evans | 5.80 | $ 475 | $ | 2,755.00 | Draft MSJ re D affirmative defenses |
| 07/07/20 | Evans | 0.90 | $ 475 | $ | 427.50 | Legal research re MSJ |
| 07/08/20 | Evans | 0.30 | $ 475 | $ | 142.50 | Finalize MSJ |
| 07/09/20 | Evans | 0.90 | $ 475 | $ | 427.50 | Finalize motion to compel |
| 07/09/20 | McKeon | 1.00 | $ 350 | $ | 350.00 | Review and file summary judgment motion; Review and file motion to compel; Email with clients re same |
| 07/15/20 | Evans | 0.50 | $ 475 | $ | 237.50 | Subpoena to David Morse |
| 07/17/20 | Evans | 0.30 | $ 475 | $ | 142.50 | Email to D counsel re discovery |
| 07/20/20 | Ruiz | 0.90 | $ 600 | $ | 540.00 | Read opp to SJ; prep for conference with McKen regarding strategy |
| 07/21/20 | Evans | 0.30 | $ 475 | $ | 142.50 | Review opp to motion to compel |
| 07/22/20 | Evans | 4.10 | $ 475 | $ | 1,947.50 | Draft reply in support of motion to compel |
| 07/22/20 | Evans | 1.90 | $ 475 | $ | 902.50 | Legal research re insurer depositions on WAC compliance |
| 07/22/20 | Evans | 0.30 | $ 475 | $ | 142.50 | Review new document production |
| 07/23/20 | Evans | 2.60 | $ 475 | $ | 1,235.00 | Proof and finalize reply re motion to compel |
| 07/23/20 | Evans | 0.20 | $ 475 | $ | 95.00 | Letter to D counsel re adjuster depositions |
| 07/23/20 | McKeon | 0.50 | $ 350 | $ | 175.00 | Draft deposition notices to  USAA adjusters and serve |
| 07/24/20 | Evans | 0.60 | $ 475 | $ | 285.00 | Finalize reply re motion to compel |
| 07/24/20 | McKeon | 0.20 | $ 350 | $ | 70.00 | Finalize and file reply to motion to compel; Email with clients re same |
| 07/27/20 | Ruiz | 1.00 | $ 600 | $ | 600.00 | Read motion from defendant re: proposed misrepresentation defense; analysis; correspondence |
| 07/27/20 | Evans | 3.00 | $ 475 | $ | 1,425.00 | Review proposed amended answer and legal research re misrepresentation defense |
| 07/28/20 | Evans | 0.90 | $ 475 | $ | 427.50 | Review Ds motion to amend answer |
| 07/28/20 | Evans | 2.00 | $ 475 | $ | 950.00 | Outline reply re MSJ and legal research re 56d burden |
| 07/30/20 | Evans | 4.10 | $ 475 | $ | 1,947.50 | Reply re MSJ on affirmative defenses |
| 07/31/20 | Ruiz | 0.50 | $ 600 | $ | 300.00 | Review reply brief on SJ |
| 07/31/20 | Evans | 0.90 | $ 475 | $ | 427.50 | Reply re MSJ on affirmative defenses |
| 07/31/20 | Evans | 0.40 | $ 475 | $ | 190.00 | Emails with Ds re discovery and depositions |
| 08/03/20 | Evans | 0.30 | $ 475 | $ | 142.50 | Outline opposition to Ds motion to amend answer |
| 08/03/20 | Evans | 0.30 | $ 475 | $ | 142.50 | Emails with D counsel re deposition scheduling |
| 08/03/20 | McKeon | 0.40 | $ 350 | $ | 140.00 | Draft and serve amended deposition notice to USAA Adjuster |
| 08/04/20 | Evans | 0.30 | $ 475 | $ | 142.50 | PRA requests re Glover and Kahne |
| 08/04/20 | Evans | 1.40 | $ 475 | $ | 665.00 | Review McBride estimates, emails, and claim file docs re concealment defense |
| 08/04/20 | Evans | 2.10 | $ 475 | $ | 997.50 | Outline opposition to motion to amend answer |
| 08/04/20 | Evans | 2.70 | $ 475 | $ | 1,282.50 | Legal research re Ds concealment defense and pleading standard |
| 08/05/20 | Evans | 1.20 | $ 475 | $ | 570.00 | Legal research re duty to disclose in insurance claims |
| 08/05/20 | Evans | 2.90 | $ 475 | $ | 1,377.50 | Analyze policy and legal authorities re replacement cost loss settlement provisions |
| 08/05/20 | Evans | 3.10 | $ 475 | $ | 1,472.50 | draft opp to motion for leave to amend |
| 08/06/20 | Evans | 0.40 | $ 475 | $ | 190.00 | Draft proposed order denying motion for leave to amend |
| 08/06/20 | Evans | 3.90 | $ 475 | $ | 1,852.50 | Draft opposition to motion for leave to amend answer |
| 08/10/20 | Evans | 1.10 | $ 475 | $ | 522.50 | Proof, cite check and finalize opposition for motion for leave to amend answer and proposed order |

| Date | Attorney | Hours | Rate | Amount | Description |
|---|---|---|---|---|---|
| 08/10/20 | McKeon | 0.30 | $ 350 | $ 105.00 | Finalize response to motion to amend answer and file |
| 08/11/20 | McKeon | 0.20 | $ 350 | $ 70.00 | Email with M. Evans; Circulate amended deposition notice of adjuster |
| 08/21/20 | Evans | 0.20 | $ 475 | $ 95.00 | Email to Ds re improper confidentiality watermark |
| 08/21/20 | Evans | 0.60 | $ 475 | $ 285.00 | Review Ds document production |
| 08/25/20 | Evans | 3.20 | $ 475 | $ 1,520.00 | Review Ds document production |
| 08/25/20 | Evans | 4.80 | $ 475 | $ 2,280.00 | Prep for Glover deposition |
| 08/26/20 | Evans | 0.30 | $ 475 | $ 142.50 | Glover deposition report and email to client |
| 08/26/20 | Evans | 5.10 | $ 475 | $ 2,422.50 | Glover deposition |
| 08/26/20 | McKeon | 5.00 | $ 350 | $ 1,750.00 | Assistance with deposition exhibits at deposition of adjuster Glover |
| 08/27/20 | Evans | 0.50 | $ 475 | $ 237.50 | TC with potential claims handling expert |
| 08/27/20 | McKeon | 0.30 | $ 350 | $ 105.00 | Phone calls with potential expert Dennis Smith and McKean Evans |
| 08/28/20 | Evans | 0.50 | $ 475 | $ 237.50 | Emails with D counsel re discovery and depositions |
| 08/28/20 | McKeon | 0.40 | $ 350 | $ 140.00 | Call with Tom Lether to schedule phone call re expert retention; Phone call with clients to schedule phone conference |
| 08/31/20 | Evans | 0.50 | $ 475 | $ 237.50 | TC with Lether re claims handling expert opinions |
| 08/31/20 | Evans | 0.70 | $ 475 | $ 332.50 | TC with clients re case update and discovery |
| 08/31/20 | McKeon | 0.20 | $ 350 | $ 70.00 | Email to expert Lether with documents for his review |
| 09/01/20 | Evans | 0.90 | $ 475 | $ 427.50 | Review D redactions and privilege log |
| 09/02/20 | Evans | 1.70 | $ 475 | $ 807.50 | Review and summarize Glover dep transcript |
| 09/14/20 | Evans | 0.20 | $ 475 | $ 95.00 | Subpoena to DMA |
| 09/14/20 | Evans | 0.70 | $ 475 | $ 332.50 | Draft reply to Ds counterclaim |
| 09/15/20 | Evans | 0.20 | $ 475 | $ 95.00 | Draft second RFPs to Ds |
| 09/15/20 | Evans | 0.40 | $ 475 | $ 190.00 | Review D's subpoenas |
| 09/16/20 | Smart | 0.40 | $ 750 | $ 300.00 | Conference with I. Ruiz re discovery |
| 09/22/20 | Ruiz | 0.40 | $ 600 | $ 240.00 | Review of subpoena re: Charter; set up call with Charter |
| 09/28/20 | Evans | 0.30 | $ 475 | $ 142.50 | Emails with D counsel re scheduling 30b6 |
| 09/29/20 | Evans | 1.50 | $ 475 | $ 712.50 | Emails with OC and clients re inspection and status of USAA investigation |
| 10/01/20 | Ruiz | 0.50 | $ 600 | $ 300.00 | Review draft discovery letter from McKean |
| 10/01/20 | Evans | 0.90 | $ 475 | $ 427.50 | Correspondence with D counsel and client re property inspection |
| 10/02/20 | Evans | 0.30 | $ 475 | $ 142.50 | Emails with D counsel re discovery and deposition scheduling |
| 10/02/20 | McKeon | 0.20 | $ 350 | $ 70.00 | Call with expert Tom Lether to arrange phone conference |
| 10/05/20 | Evans | 2.10 | $ 475 | $ 997.50 | Prep for 30b6 deposition of USAA |
| 10/05/20 | McKeon | 0.40 | $ 350 | $ 140.00 | Amend 30(b)(6) Notice to USAA; Emails with M. Evans and serve |
| 10/05/20 | Smart | 0.60 | $ 750 | $ 450.00 | Meeting with McKean Evans regarding 30(b)(6) deposition. Begin prep for same. |
| 10/07/20 | Evans | 0.20 | $ 475 | $ 95.00 | Discovery conference with D counsel |
| 10/07/20 | Evans | 3.60 | $ 475 | $ 1,710.00 | Prep for 30b6 deposition |
| 10/07/20 | Evans | 4.90 | $ 475 | $ 2,327.50 | Review D supplemental document production and rog answers |
| 10/07/20 | McKeon | 0.30 | $ 350 | $ 105.00 | Email with expert Tom Lether; Provide documents for his review |
| 10/08/20 | Evans | 0.50 | $ 475 | $ 237.50 | Review subpoena doc production |

| 10/08/20 | Evans | 4.70 | $ 475 | $ 2,232.50 | 30b6 deposition of USAA part 1 |
|---|---|---|---|---|---|
| 10/12/20 | Ruiz | 1.50 | $ 600 | $ 900.00 | Review and analysis of motion to amend and declaration |
| 10/12/20 | Evans | 1.40 | $ 475 | $ 665.00 | Prep for 30b6 depositions |
| 10/12/20 | Evans | 1.50 | $ 475 | $ 712.50 | Deposition of Chuck Herbst |
| 10/12/20 | Evans | 1.70 | $ 475 | $ 807.50 | TC with clients |
| 10/12/20 | Knudsen | 0.50 | $ 475 | $ 237.50 | Confer with team; review motion to amend answer |
| 10/12/20 | McKeon | 1.50 | $ 350 | $ 525.00 | Meeting with W. Smart; Work on exhibits and deposition outline for USAA 30(b)(6) deposition |
| 10/12/20 | Smart | 2.80 | $ 750 | $ 2,100.00 | Prepare for 30(b)(6) deposition. Conference with Isaac and McKean concerning motion to amend and related documents |
| 10/13/20 | McKeon | 3.50 | $ 350 | $ 1,225.00 | Assist with exhibits and technology at 30(b)(6) deposition of USAA |
| 10/13/20 | Smart | 5.50 | $ 750 | $ 4,125.00 | Two conference calls with clients. Conference with Tom Lether re substitution. Work on WCS declaration. Take deposition of USAA. |
| 10/14/20 | Evans | 0.30 | $ 475 | $ 142.50 | Emails with T. Lether facilitating transition |
| 10/14/20 | McKeon | 1.10 | $ 350 | $ 385.00 | Review federal court rules re withdrawal of counsel; Draft Stipulated Motion for Withdrawal and Substitution of Counsel; Circulate to parties and file |
| 10/19/20 | McKeon | 0.50 | $ 350 | $ 175.00 | Transcribe W. Smart Declaration |
| 10/19/20 | Smart | 2.80 | $ 750 | $ 2,100.00 | Conference call with Tom Lether, work on declaration of WCS regarding facts surrounding meeting with Harjo, Call from Kurt Harjo regarding status |
| 10/20/20 | McKeon | 1.00 | $ 350 | $ 350.00 | Transcribe further additions to W. Smart declaration; Review file for meeting with Harjo |
| 10/20/20 | Smart | 1.50 | $ 750 | $ 1,125.00 | Continue to draft declaration of William C. Smart |
| 10/21/20 | Evans | 0.30 | $ 475 | $ 142.50 | Email and TC with WCS re glover dep testimony |
| 10/21/20 | McKeon | 0.90 | $ 350 | $ 315.00 | Transcribe several revisions to Smart Declaration |
| 10/21/20 | Smart | 2.10 | $ 750 | $ 1,575.00 | Review amended complaint and counter claims. Work on declaration. Conference with Lether re same |
| 10/23/20 | McKeon | 1.00 | $ 350 | $ 350.00 | Transcribe further additions to declaration of W. Smart and provide to Tom Lether for Review |

82,896.00

Note: Ruiz & Smart withdrew per their email on 10/13/20 yet continued to bill.

| | | | | |
|---|---|---|---|---|
| 12/19/2019 | Pay.gov | $ | 400.00 | Federal Filing fee |
| 12/26/19 | OIC | $ | 10.00 | Service Fee OIC - Engst, Cooper and Anna |
| 01/23/20 | ABC Legal | $ | 122.00 | Copies |
| 09/21/20 | Buell | $ | 686.25 | Deposition Transcript - Edwards |
| 09/21/20 | Buell | $ | 1,570.95 | Deposition Transcript - 30(b)(6) Deposition |
| 09/21/20 | Buell | $ | 1,199.40 | Deposition Transcript - Glover |

$ 3,988.60